848 So.2d 642 (2003)
STATE of Louisiana, Appellee,
v.
Clifton R. ROBINSON, Appellant.
No. 37,043-KA.
Court of Appeal of Louisiana, Second Circuit.
May 14, 2003.
Opinion Denying Rehearing June 30, 2003.
*643 Louisiana Appellate Project by: Paula Corley Marx, for Appellant.
Richard Ieyoub, Attorney General, Jerry L. Jones, District Attorney, Shirley M. Wilson, Assistant District Attorney, for Appellee.
Before WILLIAMS, STEWART and PEATROSS, JJ.
PEATROSS, J.
Defendant, Clifton R. Robinson, was charged with two counts of aggravated battery in violation of La. R.S. 14:34 for the multiple stabbing of William F. Smith. Defendant was convicted by a unanimous jury of two counts of second degree battery in violation of La. R.S. 14:34.1. The trial court sentenced Defendant to five years imprisonment on each count, to be served concurrent with each other. Defendant *644 now appeals his convictions and sentences. For the reasons stated herein, Defendant's convictions and sentences are affirmed.

FACTS
On August 10, 2001, William F. Smith was sitting on the porch of a vacant house on Marx Street in Monroe with two friends, Candy Johnson and Ray Robinson.[1] The vacant house was owned by a member of Mr. Smith's family and he had assumed the responsibility of maintaining the property and yard when the house was vacated.[2] Mr. Smith owned and lived in a mobile home located on the adjacent lot. On this particular evening, Mr. Smith was shelling peas and the group was drinking alcohol.
Late in the evening, Defendant approached the porch of the vacant house where Mr. Smith and his friends were sitting and tried to sell Mr. Smith some tools, which, according to Ms. Johnson, were stolen. The record indicates that Mr. Smith had known Defendant for many years and that Defendant had spent nights in Mr. Smith's home. Mr. Smith told Defendant he was not interested in the tools and asked him to leave. Defendant and Ms. Johnson then left.
A short time later, Defendant returned with Ms. Johnson, again attempting to sell the tools. Mr. Smith again told Defendant that he had no use for the tools and told Defendant to leave the property. Mr. Smith testified that Defendant replied, "it ain't your house" and "I ain't going no damn where. Put me out," and began shouting profanity at Mr. Smith. Mr. Smith attempted, unsuccessfully, to remove Defendant from the porch.[3] As this happened, Defendant pulled a pocket knife out of his back pocket. Mr. Smith, who testified that he did not see the knife, picked up a board that was beside the front door, and swung it at Defendant. The board missed Defendant, but hit the porch post and broke apart. At that point, Defendant stabbed Mr. Smith in the shoulder. Mr. Smith then attempted to flee from Defendant, falling over a chair and off of the porch into the yard. Defendant then straddled Mr. Smith in the yard and began hitting and stabbing him with the pocket knife.
As the altercation on the porch began, across the street Tony Hickman and his wife were getting into their car to leave after visiting Mr. Hickman's brother. Mr. Hickman heard the commotion on the porch and, specifically, heard Mr. Smith telling Defendant to get off the porch. Mr. Hickman testified that he heard Defendant respond, "it ain't your house." Mr. Hickman walked around his car and saw that the two men were then in the yard and saw Defendant straddling Mr. Smith and punching him. While Mr. Hickman did not see the pocket knife, he testified that he heard Mr. Smith say, "you stabbed me...." Mr. Smith and Ms. Johnson both testified that, as he was beating and stabbing Mr. Smith, Defendant stated, "I'll kill your ass."
Ms. Johnson began yelling at Defendant to stop and Defendant got off of Mr. Smith *645 and fled the scene. Defendant had stabbed Mr. Smith in the shoulder and stomach and had punched him several times in the face and body. Although Mr. Smith was able to stand, his stomach had been cut open and his intestines were protruding from one of the wounds. Emergency assistance was summoned and Mr. Smith was taken to the hospital where he underwent surgery and treatment for stab wounds to the shoulder and stomach.
Defendant was arrested two months later. The original booking charges were two counts of attempted second degree murder, but the district attorney later filed a bill of information charging Defendant with two counts of aggravated battery. As previously stated, Defendant was tried by a jury, with witnesses testifying as described above. In addition to Mr. Smith, Ms. Johnson and Mr. Hickman, two detectives of the Monroe Police Department testified regarding the investigation and arrest. Specifically, Detective James Clark provided testimony regarding the arrest and the Defendant's post-arrest silence, as is discussed in more detail later in this opinion, about which Defendant now complains on appeal. Defendant presented no evidence. The jury found Defendant guilty of the responsive verdict of second degree battery on both counts.
The trial court ordered a pre-sentence investigation report and Defendant was sentenced on August 5, 2002. The trial court noted that the pre-sentence investigation report found that Defendant was a fifth-felony offender, with felony convictions beginning in 1984. In addition, Defendant's record included numerous misdemeanor convictions, some of which involved crimes against persons, including at least three prior convictions for simple battery. The trial court found Defendant not to be eligible for probation or a suspended sentence. As previously stated, the trial court sentenced Defendant to the maximum sentence on each count of five years at hard labor, to be served concurrently with each other, with credit for time served.
The record shows that the State had filed a habitual offender bill of information on July 26, 2002, alleging Defendant to be a second-felony offender. During the sentencing, however, the State advised the court that, based on the sentences imposed, it was abandoning habitual offender proceedings against Defendant. No motion to reconsider the sentences was filed. This appeal ensued.

DISCUSSION
Defendant has assigned the following errors on appeal:
1. The evidence herein is legally insufficient to sustain Appellant's conviction.
2. The Honorable Trial Court erred in imposing upon Appellant an excessive sentence.
3. The Honorable Trial Court erred in failing to declare a mistrial when comment was made on Appellant's post arrest silence.

Sufficiency of evidence
Defendant argues that there was insufficient evidence to convict him of second degree battery. While he does not dispute the fact that he hit and stabbed the victim or that the battery inflicted serious bodily injury, Defendant submits that the State failed to meet its burden of proof in disproving that he acted in self-defense. Specifically, Defendant argues that the evidence does not exclude the reasonable hypothesis that the battery was in self-defense. We disagree.
A sufficiency of the evidence claim requires the reviewing court to determine *646 whether a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could reasonably conclude that all of the elements of the offense have been proven beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La. App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The court's authority to review questions of fact in a criminal case is limited to the sufficiency of the evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, supra; State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir. 1986), writ denied, 499 So.2d 83 (La.1987).
La. R.S. 14:34.1 provides:
Second degree battery is a battery committed without the consent of the victim when the offender intentionally inflicts serious bodily injury. For purposes of this article, serious bodily injury means bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death.
Whoever commits the crime of second degree battery shall be fined not more than two thousand dollars or imprisoned, with or without hard labor, for not more than five years, or both.
La. R.S. 14:19 provides:
The use of force or violence upon the person of another is justifiable, when committed for the purpose of preventing a forcible offense against the person or a forcible offense or trespass against property in a person's lawful possession; provided that the force or violence used must be reasonable and apparently necessary to prevent such offense, and that this article shall not apply where the force or violence results in a homicide.
The standard of proof when a defendant claims self-defense in a non-homicide case is a preponderance of the evidence. State v. Freeman, 427 So.2d 1161 (La.1983); State v. Braswell, 605 So.2d 702 (La.App. 2d Cir.1992). The jurisprudence does not clearly define or allocate the burden of proving self-defense in a non-homicide case. State v. Braswell, supra. The jury in the case sub judice was charged with the more stringent standard, placing the burden of proof on the State. We will, therefore, review the evidence in light of this charge, requiring the State to negate self-defense beyond a reasonable doubt. See State v. Braswell, supra.
The issue of self-defense requires a dual inquiry, an objective inquiry into whether the force used was reasonable under the circumstances and a subjective inquiry into whether the force was apparently necessary. State v. McClure, 34,880 (La.App.2d Cir.8/22/01), 793 So.2d 454, citing State v. McBride, 00-00422 (La.App. 3d Cir.11/15/00), 773 So.2d 849, writ denied, 01-0294 (La.2/8/02), 807 So.2d 858, and State v. Wallace, 98-2450 (La.App. 1st Cir.9/24/99), 754 So.2d 991. A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict. La. R.S. 14:21; State v. McClure, *647 supra, citing State v. Tisby, 33,591 (La. App.2d Cir.6/21/00), 764 So.2d 209, writ denied, 00-2236 (La.6/1/01), 793 So.2d 181.
In the case sub judice, the evidence shows that Defendant went on property belonging to another, uninvited, for the purpose of selling items which were allegedly stolen. Although Mr. Smith was not the owner of the property, he was a family member who had undertaken the responsibility of overseeing the property. When Mr. Smith asked Defendant to leave the property, Defendant refused and demanded that Mr. Smith make him leave. As previously noted, the record is not entirely clear as to whether Mr. Smith pushed or pulled Defendant by the arm in an attempt to get him off of the porch. At trial, Mr. Smith testified he did not; whereas, in his original statement to the police, he stated that he grabbed Defendant's arm in an effort to remove him from the porch. When Defendant refused to leave the property, Mr. Smith picked up a board and swung it at Defendant. The board missed Defendant, but hit the porch post causing the board to break apart, leaving Mr. Smith unarmed. Thereafter, Defendant stabbed Mr. Smith in the shoulder with a small knife. Mr. Smith testified that, after being stabbed in the shoulder, he was trying to get away from Defendant when he tripped over a chair on the porch and fell into the yard. Defendant then pinned Mr. Smith down by sitting astride him and repeatedly punched and stabbed him. Defendant did not ease his assault until Ms. Johnson told Defendant to leave Mr. Smith alone.
The evidence, viewed in a light most favorable to the State, shows that Defendant was the initial aggressor and brought on the difficulty by trespassing onto property owned by Mr. Smith's family and maintained by Mr. Smith, and then refusing to leave the property. Defendant started the conflict by shouting profanity at Mr. Smith when he was asked to leave the property and demanding that Mr. Smith "put him out." Once the conflict was underway, Defendant made no effort to discontinue the difficulty or to withdraw in good faith. Nothing prevented Defendant from simply stepping off the porch and leaving the property.
Even assuming that Mr. Smith initiated the conflict, the evidence establishes that he attempted to withdraw from the conflict when he turned and tried to flee off of the porch and away from Defendant. Defendant then pursued Mr. Smith, pinning him down and beating and stabbing him. It is also noteworthy that Mr. Smith was a much older and smaller man than Defendant and did not pose any serious threat of harm to Defendant. Accordingly, viewed in a light most favorable to the State, the evidence is sufficient to convince any rational trier of fact beyond a reasonable doubt that Defendant used force or violence upon Mr. Smith, with the intent to cause serious bodily harm, and that Defendant's conduct was either not justified by the need to prevent the victim from committing a forcible offense against Defendant, or was greater than necessary to prevent it. See La. R.S. 14:19.

Excessive sentence/maximum sentence imposed
Defendant argues that the maximum sentences were unconstitutionally excessive. Since Defendant did not file a motion to reconsider his sentences, with specific allegations of errors, he is relegated to having this court consider the bare claim of constitutional excessiveness. State v. Mims, 619 So.2d 1059 (La.1993); State v. Duncan, 30,453 (La.App.2d Cir.2/25/98), 707 So.2d 164.
The test imposed by the reviewing court in determining the excessiveness *648 of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C.Cr.P. art. 894.1. The second inquiry involves a determination of whether the sentence imposed is too severe. This inquiry depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a needless and purposeless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864.
A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of discretion, this court will not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Washington, 29,478 (La.App.2d Cir.4/2/97), 691 So.2d 345. The crime of second degree battery carries a term of imprisonment, with or without hard labor, for not more than five years. La. R.S. 14:34.1.
La. R.S. 14:34.1 provides, in pertinent part:
Whoever commits the crime of second degree battery shall be fined not more than two thousand dollars or imprisoned, with or without hard labor, for not more than five years, or both.
Defendant argues that the record contains an insufficient factual basis or explanation for the sentence of five years at hard labor on each count imposed by the trial court. He further asserts that the record does not show what considerations the trial court took into account in fashioning the sentence.
Contrary to Defendant's assertion, the record contains an ample showing of the considerations taken into account by the trial court in imposing the sentence. The trial court reviewed the pre-sentence investigation report and the facts of the case. It also reviewed Defendant's extensive criminal history, which included five felony and numerous misdemeanor convictions. Many of the convictions involved batteries or other crimes against persons.
In the instant offense, Defendant used a knife against the victim, causing serious, life threatening injuries. Although the evidence clearly supports convictions for aggravated battery, the jury found Defendant guilty of the lesser offense of second degree battery. After consideration of the factors presented by Defendant, and in Defendant's pre-sentence report, the trial court imposed a maximum sentence of five years at hard labor, with credit for time served and directed the two sentences to run concurrently with each other. The trial court did not believe that probation or a lesser sentence would be appropriate in light of the seriousness of the offense.
Defendant, a multiple felony offender, acted without justification and caused substantial injury to the victim. This sentence does not shock the sense of justice. We find no manifest abuse of the trial court's wide discretion in the imposition of the maximum sentences in this case, i.e., two five-year sentences.
This assignment is without merit.

Mistrial/comment on post-arrest silence of Defendant
La.C.Cr.P. art. 770 provides, in pertinent part:

*649 Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
* * *
(3) The failure of the defendant to testify in his own defense;
Defendant argues that the trial court should have ordered a mistrial because the assistant district attorney elicited testimony at trial regarding Defendant's post-arrest silence. Detective Clark testified as follows in response to questions of the assistant district attorney:
Q. When the arrest was made, did the defendant give a statement?
A. He did not.
Q. Did he allege any type of self-defense claim?
By Defense counsel: Objection, Your Honor, that goes to the right of the defendant to remain silent.
By ADA: Withdrawn.
By the Court: Sustained.
The record does not reflect that Defendant made any motion for mistrial or to admonish following his objection.
While the language of article 770 provides for a mistrial in the event the prosecution refers directly or indirectly to the failure of the defendant to testify on his behalf, Defendant's failure to move for mistrial or object to the prosecution's statements is fatal to his claim of error on appeal. State v. Pearson, 336 So.2d 833 (La.1976); State v. Gatch, 27,701 (La. App.2d Cir.2/28/96), 669 So.2d 676, writ denied, 96-0810 (La.9/20/96), 679 So.2d 429. An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. La. C.Cr.P. art. 841(A). The absence of a timely motion for mistrial on article 770 grounds constitutes a waiver of the defect. State v. Gatch, supra, citing State v. Shepherd, 566 So.2d 1127 (La.App. 2d Cir. 1990), and State v. Hookfin, 476 So.2d 481 (La.App. 1st Cir.1985).
In addition, the language of article 770, while requiring the motion for mistrial to be asserted by the defendant, additionally recognizes that the defendant may elect to continue the trial with only an admonition to the jury being given. Thus, when the defendant does not raise a timely motion for mistrial for the prosecutor's comment on the defendant's failure to testify, he has elected not to remedy any negative effect that comment may have had on the jury and to continue the trial. The motion for mistrial is a necessity; and Defendant, after waiving the issue at trial, cannot raise it for the first time on appeal. This assignment of error is without merit.

CONCLUSION
For the foregoing reasons, the convictions and sentences of Defendant Clifton R. Robinson are affirmed.
AFFIRMED.
STEWART, J., concurs with written reasons.
STEWART, J., concurs.
While I concur with the majority that based on the assignments of error presented this case should be affirmed, it concerns me that the question of whether double jeopardy was present goes unresolved.
The U.S. Supreme Court, and the Louisiana Supreme Court have both interpreted the protection against double jeopardy to mean, "double jeopardy provisions protect an accused not only from a second prosecution on the same offense, but also from multiple punishments for the same *650 criminal conduct." State v. Vaughn, 431 So.2d 763, 767 (La.1983), citing, North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). Here, it is arguable that the state had charged the defendant with two identical, but separate, offenses arising out of the same continuous offense.
While I believe that one of these convictions probably constitutes double jeopardy because both convictions arose out of one continuous battery, this error has not been raised by the defendant and doesn't appear to be error patent.
Before BROWN, WILLIAMS, STEWART, PEATROSS & DREW, JJ.
PER CURIAM.
On rehearing, Defendant, for the first time, argues that his convictions on two counts of second degree battery violate the prohibition against double jeopardy. While noted as a possible issue by the concurring opinion, the majority opinion did not address any possible double jeopardy issue because it had not been raised by Defendant and because we concluded that, in the case sub judice, any such issue was not subject to error patent review as there is no double jeopardy violation "discoverable by the mere inspection of the pleadings and proceedings and without inspection of the evidence." La.C.Cr. P. art. 920. Now, on rehearing, we further find that the claim of double jeopardy was not properly raised in the trial court, or on appeal, and cannot properly be raised for the first time in an application for rehearing. See Mosing v. Domas, 02-0012 (La.10/15/02), 830 So.2d 967; Churchill Farms, Inc. v. Louisiana Tax Commission, 249 So.2d 594 (La.App. 4th Cir.1971), writ refused, 259 La. 321, 249 So.2d 923 (La.1971).
The appellant will have two years, after the finality of his conviction, to raise this issue. See La.C.Cr. P. art. 930.3(3) and La.C.Cr. P. art. 930.8. The application for rehearing is DENIED.
NOTES
[1] Defendant's full name is Clifton Ray Robinson. He and the male friend who was sitting on the porch with Mr. Smith on the evening of the incident are cousins and are both named Ray Robinson.
[2] Ms. Johnson testified at trial that the vacant house was often used for doing drugs.
[3] There is some dispute in the testimony as to whether Mr. Smith grabbed or pulled Defendant's arm to remove him from the porch. Mr. Smith testified at trial that he did not grab Defendant; however, in his initial statement to the police, Mr. Smith stated that he did grab Defendant.