896 So.2d 257 (2005)
STATE of Louisiana, Appellee,
v.
Fred Elvis RICHARDSON, Appellant.
No. 39,456-KA.
Court of Appeal of Louisiana, Second Circuit.
March 2, 2005.
*260 Sherry Watters, Louisiana Appellate Project, New Orleans, for Appellant.
Paul J. Carmouche, District Attorney, Dale G. Cox, Lea R. Hall, Assistant District Attorneys, for Appellee.
Before BROWN, STEWART and LOLLEY, JJ.
LOLLEY, J.
This criminal appeal arises from the First Judicial District Court, Parish of Caddo, State of Louisiana. Fred Elvis Richardson was tried by a judge and convicted of aggravated battery, found to be a third felony habitual offender, and sentenced to life imprisonment without benefits. He now appeals. For the following reasons, Richardson's conviction and sentence are affirmed.

FACTS
On November 2, 2002, Andre Bryant and his wife Carolyn went to the home of Carolyn's mother, Carrie Richardson, to bring Mrs. Richardson her paycheck and to check on her. Mrs. Richardson and Carolyn worked together. Mrs. Richardson had called Carolyn earlier in the day to tell her that she was not coming to work, because she hurt her leg. When Andre and Carolyn arrived at Mrs. Richardson's apartment, they both noticed that Mrs. Richardson's eye was bruised and swollen, as was her knee. Mrs. Richardson, a normally lucid person, could not remember or explain how the injuries occurred, which Carolyn thought was very unusual. Andre and Carolyn took Mrs. Richardson to the hospital, where she was given a removable knee brace and pain medication. After she was treated, she was released.
When Andre and Carolyn brought Mrs. Richardson back to her apartment, they took her to the back bedroom. Three other people were already in the small bedroom: George Richardson (Mrs. Richardson's husband, who was bedridden then, and who is now deceased), and their two other children (and Carolyn's siblings), the defendant, Fred Elvis Richardson, and Estelle Joshua. The defendant and Estelle were both living in the apartment with their parents at that time. Andre and Carolyn were standing in the bedroom doorway, Estelle was sitting in a chair, Mrs. Richardson was sitting on the bed, Mr. Richardson was lying on the bed, and the defendant was sitting on a couch. Carolyn proceeded to explain to Estelle how to care for Mrs. Richardson, including the procedure for removing the brace for her bath and administering the pain medications.
According to Carolyn and Andre, the defendant then said that "You-all" think I did something to her. Andre stated at trial that if he and Carolyn had suspected the defendant of hurting Mrs. Richardson, they would not have returned her to the apartment. Carolyn responded that they did not think he did anything; however, she noted, "you sound guilty." Andre and Carolyn watched the defendant reach under the couch and pull out a crowbar, and they immediately left the room because Carolyn was frightened. Andre and Carolyn proceeded through the hallway and the main living area to the front door area, followed by Mrs. Richardson, who was followed by the defendant. As Andre turned his back to the defendant to open the front *261 door, Carolyn, who was facing the defendant, said to him, "You're just a coward." The defendant pushed Mrs. Richardson out of the way and hit Andre in the back of the head with the crowbar. The blow cracked Andre's skull and made a three and one-half inch gash that required ten staples. Andre turned around to face the defendant, and the defendant hit Andre again, this time in the front of his head, causing a gash that required six staples. Andre attempted to keep the defendant from hitting him again by punching the defendant twice. During the scuffle that ensued, Andre pushed the defendant into a curio cabinet. Broken glass from the curio cabinet caused cuts on Andre's forearm and knee. Both Carolyn and Estelle jumped on top of the defendant and tried to take the crowbar from him. After Carolyn bit the defendant and put her foot on the defendant's chest, he released the crowbar. Andre was bleeding and lost consciousness. Carolyn called 911.
When Officer Paul Robinson of the Shreveport Police Department responded to the call about a domestic disturbance at the residence, he found the furnishings in disarray and the victim lying unconscious in a pool of blood. He interviewed everyone in the house, and everyone except Mrs. Richardson said that the defendant had beaten Andre in the head with a tire tool (or crowbar, or pry bar). Mrs. Richardson was somewhat unresponsive during her interview, and it was apparent to Off. Robinson that she did not want her son to go to jail. Officer Robinson advised the defendant of his Miranda rights and then took a verbal statement from the defendant at the scene. Initially, the defendant admitted to Off. Robinson arming himself with a crowbar prior to the attack, but that he struck Andre with the crowbar only when Andre attacked him. However, after some questioning, the defendant eventually admitted that he struck Andre with the crowbar before Andre pushed him. The crowbar was never found.
Fred Elvis Richardson was charged by bill of information with the aggravated battery of Andre Bryant. Richardson waived his right to a trial by a jury, and his trial was conducted before the trial judge. The defendant was represented by counsel at all times.
Andre and Carolyn testified at trial regarding the facts and circumstances surrounding the crime, as related hereinabove. Estelle also testified, stating that she was on the defendant's "side." She said that Mrs. Richardson told her over the phone the evening of the incident that she bumped her knee with a vacuum cleaner at work, and that something also happened to her eye. Estelle testified that Andre and Carolyn convinced Mrs. Richardson to go to the hospital, and that Andre asked Estelle if the defendant had "jumped on" Mrs. Richardson. Estelle witnessed the conversation in the bedroom that preceded the fight, and thought that Andre and Carolyn were the aggressors, because they came into their home and insinuated that the defendant hurt his mother, Mrs. Richardson. She said that at that point, Mrs. Richardson told Andre and Carolyn to leave because nobody hit her. Estelle saw the defendant leave the bedroom with "something" in his hand. She testified that she did not witness the altercation that followed, but later joined Carolyn in trying to take what looked like a "little rod" from the defendant. It looked to Estelle like Carolyn was trying to "beat" the defendant "to death."
The defense called Mrs. Richardson as a witness at trial. She related that she hurt her knee on a vacuum cleaner, and the bruise on her eye was a chemical burn. Mrs. Richardson stated that when Andre and Carolyn insinuated that the defendant *262 hurt her, she asked them to leave her residence. She testified that she did not see the altercation or the extent of Andre's injuries. On cross-examination by the state, Mrs. Richardson could not explain certain inconsistencies, including the fact that she told Andre and Carolyn that she could not remember what happened to her knee and eye. Mrs. Richardson explained that she loves all her children, including her son-in-law, Andre, and did not want to "scar her life forever" with some of them by getting involved in this domestic squabble.
The defendant testified on his own behalf, and described what he considered to be the motive behind the insinuations made by Andre and Carolynthey were in financial trouble and wanted Mrs. Richardson to come live with them and help them pay their bills. He related that as Andre and Carolyn were leaving the residence, they suddenly turned on himAndre grabbed him by the throat while Carolyn scratched his face. The defendant related that he had already armed himself with the crowbar because he was frightened by Andre and Carolyn, who were both larger than he and had called him a coward. He described the crowbar as a steel pole that was 12 to 14 inches long. The defendant admitted arming himself with the crowbar before Andre and Carolyn moved from the back room to the front door, and explained that he probably reached around and hit Andre in the back of the head with the crowbar during the altercation. On cross-examination, the defendant admitted that he had previously been convicted of distribution of cocaine, simple burglary and negligent homicide.
The defendant was found guilty as charged of aggravated battery. The trial court specifically noted that it found the testimony of Andre and Carolyn Bryant to be credible and did not believe the testimony given by the defendant or Mrs. Richardson. The trial court specifically found that the physical evidence of Andre's injury was inconsistent with the defendant's claim of self-defense.
Upon Richardson's conviction, the state filed a habitual offender bill of information charging the defendant as a fourth felony offender, based on the predicate offenses of negligent homicide, distribution of cocaine and simple burglary. At the hearing on the habitual offender bill, the state orally amended the bill of information to delete the predicate offense of negligent homicide, and the defense agreed to the amendment. Thus, the state proceeded against Richardson as a third felony offender.
At the habitual offender proceeding, the state introduced the district court minutes and the bills of information and fingerprints for both predicate offenses. The defense made no objection. The state presented the testimony of fingerprint identification experts who proved that Richardson committed both prior felonies. At the state's request, the trial court took judicial notice of the defendant's conviction of the instant offense. The defense presented no evidence at the habitual offender proceeding. After the hearing, the trial court found Richardson to be a third felony habitual offender and discussed its reasons for the adjudication, including the qualifications of the fingerprint experts, the sentencing exposure of the predicate offenses, and the applicability of La. R.S. 15:529.1(A)(1)(b)(ii).
At Richardson's sentencing and after reviewing a pre-sentence investigation report, the trial court articulated the criteria supporting its reasons for sentencing in compliance with La. C. Cr. P. art. 894.1. The trial court outlined the facts and circumstances surrounding the instant offense as well as four previous offenses. *263 Particularly, the facts of the defendant's negligent homicide conviction were set forth in detail, including the fact that the defendant struck, killed and dragged a five-year-old boy with a vehicle while driving while intoxicated in 1979. It concluded that Richardson's prior felonies showed a complete disregard for human life and property. Richardson's other criminal history, including convictions and arrests, were set forth for the record. He was sentenced to serve a term of life imprisonment without benefit of probation, parole, or suspension of sentence. Richardson now appeals his conviction and sentence.

DISCUSSION

Sufficiency of the Evidence
On appeal, Richardson argues that the state failed to prove he was guilty of aggravated battery beyond a reasonable doubt, as the preponderance of the evidence showed he acted in self-defense. Richardson argues that during this incident, he was defending himself, his home and his parents. He argues that the state failed to prove beyond a reasonable doubt that Andre and Carolyn were not the aggressors, and that Richardson was not acting under a reasonable belief that he had to defend himself and his household. For the following reasons, we disagree.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Cummings, 95-1377 (La.02/28/96), 668 So.2d 1132; State v. Hunter, 33,066 (La.App.2d Cir.09/27/00), 768 So.2d 687, writs denied, XXXX-XXXX (La.10/26/01), 799 So.2d 1150, 2001-2087 (La.04/19/02), 813 So.2d 424. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/04/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App.2d Cir.09/25/98), 719 So.2d 610, writ denied, 98-2723 (La.02/05/99), 737 So.2d 747.
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5 § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984).
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La.App.2d Cir.09/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.03/28/03), 840 So.2d *264 566, 2002-2997 (La.06/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. White, 28,095 (La.App.2d Cir.05/08/96), 674 So.2d 1018, writs denied, 96-1459 (La.11/15/96), 682 So.2d 760, and 98-0282 (La.06/26/98), 719 So.2d 1048.
The standard of proof when a defendant claims self-defense in a non-homicide case is a preponderance of the evidence. State v. Freeman, 427 So.2d 1161 (La.1983); State v. Updite, 38,423 (La.App.2d Cir.06/23/04), 877 So.2d 216, writ denied, XXXX-XXXX (La.11/24/04), 888 So.2d 229. The state must then prove beyond a reasonable doubt that the defendant did not act in self-defense. State v. Scales, 93-2003 (La.05/22/95), 655 So.2d 1326, cert. denied, Scales v. Louisiana, 516 U.S. 1050, 116 S.Ct. 716, 133 L.Ed.2d 670 (1996), rehearing denied, 516 U.S. 1142, 116 S.Ct. 977, 133 L.Ed.2d 897 (1996); State v. Updite, supra. The issue of self-defense requires a dual inquiry: an objective inquiry into whether the force used was reasonable under the circumstances and a subjective inquiry into whether the force was apparently necessary. State v. Robinson, 37,043 (La.App.2d Cir.05/14/03), 848 So.2d 642. A person who is the aggressor or who brings on the difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict. La. R.S. 14:21; State v. Updite, supra; State v. Robinson, supra.
A battery is the intentional use of force or violence upon the person of another, or the intentional administration of a poison or other noxious liquid or substance to another. La. R.S. 14:33. According to La. R.S. 14:34, aggravated battery is a battery committed with a dangerous weapon. "Dangerous weapon" includes any gas, liquid or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm. La. R.S. 14:2(3). A crow bar has specifically been considered a dangerous weapon. See State v. Jeselink, 35,189 (La.App.2d Cir.10/31/01), 799 So.2d 684; State v. Hawkins, 99-217 (La.App. 5th Cir.07/02/99), 740 So.2d 768.
In the case sub judice, the evidence was sufficient under the Jackson standard to support the defendant's conviction of aggravated battery. There is no question that an aggravated battery was committed upon the victim. The record reflects that Richardson intentionally used force and violence upon the victim while using a dangerous weapon. The crowbar used in the instant case was clearly a dangerous weapon, because, in the manner used, it was calculated or likely to produce death or great bodily harm. See State v. Jeselink, supra.
The record also supports the conclusion that Richardson did not prove his claim of self-defense by a preponderance of the evidence. See State v. Freeman, supra; State v. Updite, supra. The only evidence that he acted in self-defense was his own self-serving testimony, which was only partially corroborated by the sister who lives with him, and by his mother, who does not want him to go to prison. Even that evidence tended to prove that Richardson armed himself with the crowbar during the verbal exchange, followed the victim as he tried to leave the residence, and hit the victim from behind. The force used was not reasonable under the circumstances, nor was it apparently necessary. *265 Even if Richardson were considered to have proved self-defense by a preponderance of the evidence, the evidence presented by the state, which included what the trial court considered to be the credible testimony of the victim and his wife, proved beyond a reasonable doubt that Richardson did not act in self-defense. The trial court made specific findings regarding the credibility of the witnesses. The role of this court is not to assess the credibility of witnesses or reweigh evidence. See State v. Smith, supra. From the record before us, those findings are clearly reasonable, and we conclude this assignment of error to be meritless.

Validity of the Jury Waiver
Richardson also argues that the records fails to show a valid waiver of his right to a jury trial. We disagree.
At the pre-trial proceedings held in June 2003, Richardson was present with counsel and requested a bench trial. He was sworn and stated that he completed twelve grades in school and could read and write. The trial court explained to Richardson his absolute right to have a trial by jury, how the jury trial would proceed, and the consequences of the waiver of the right to a jury trial. In doing so, the trial court advised him:
Do you also understand that, if you waive your right to a trial by Jury, you cannot change your mind at a later date and request a Jury?
* * *
In other words, the decision to waive a Jury, once made, cannot be changed.
Richardson expressly stated that he waived his right to a jury trial and wanted to have a bench trial. The trial court accepted the waiver and a bench trial was set.
Louisiana C. Cr. P. art. 780 provides:
A. A defendant charged with an offense other than one punishable by death may knowingly and intelligently waive a trial by jury and elect to be tried by the judge. At the time of arraignment, the defendant in such cases shall be informed by the court of his right to waive trial by jury.
B. The defendant shall exercise his right to waive trial by jury in accordance with the time limits set forth in Article 521. However, with permission of the court, he may exercise his right to waive trial by jury at any time prior to the commencement of trial.
C. The defendant may withdraw a waiver of trial by jury unless the court finds that withdrawal of the waiver would result in interference with the administration of justice, unnecessary delay, unnecessary inconvenience to witnesses, or prejudice to the state.
The court in State v. Wilson, 437 So.2d 272 (La.1983), held:
The right to trial by jury is protected by La. Const. Art. I, § 17 (1974). Except in capital cases, the defendant may knowingly and intelligently waive trial by jury and elect to be tried by the judge. As in the case of other significant rights, however, waiver of trial by jury is valid only if the defendant acted voluntarily and knowingly. In order to protect this valuable right, as well as to prevent postconviction attacks on the waiver, the better practice is for the trial judge to advise the defendant personally on the record of his right to trial by jury and require the defendant to waive the right personally either in writing or by oral statement in open court on the record. By this procedure, the trial judge not only insures that an express waiver is recorded, but also assures that the waiver is made voluntarily *266 and knowingly. (Citations and footnote omitted.)
Because of the importance attached to the right to a jury trial, a trial judge must exercise great care in allowing a criminal defendant to waive the right. La. C. Cr. P. art. 780; State v. Kahey, 436 So.2d 475 (La.1983).
Here, the record reflects that Richardson's waiver of a jury trial was a knowing and intelligent waiver. The transcript of the proceedings reflects that the trial court personally advised him on the record of his right to a jury trial, which the defendant waived by an oral statement in open court on the record. See State v. Wilson, supra. We note that Richardson was represented by counsel during the proceedings. Although the trial court incorrectly advised Richardson that he could not change his mind and request a jury trial at a later date (La. C. Cr. P. Art 780 C specifically allows a defendant to withdraw a jury-trial waiver), the defendant has not proved that he was prejudiced by this statement. The defense has only speculated that if Richardson had wanted a jury trial at a later date, he would not have known to object and invalidate his waiver.
We find no jurisprudence which states or implies that once the defendant waives the right to trial by jury, the trial court judge is under any type of burden or responsibility to continue to inquire of a defendant if he still wishes to proceed in that manner. If the defendant and/or his counsel at some point wish to revisit the issue of waiver prior to trial then it is his/their burden to proceed to attempt to withdraw the waiver of trial by jury. Consequently, and despite the statement by the trial court, we conclude that this assignment is without merit.

Habitual Offender Adjudication
In this assignment of error, Richardson argues that the multiple offender proceedings against the defendant failed to follow the statute. He notes that the multiple offender bill was amended on the day of the hearing, and that the trial court failed to give written reasons for its decision, as required by law. He also contends that La. R.S. 15:529.1 requires specific findings and reasons before enhancement of a sentence and allows that enhancement without a jury determination of fact, in violation of Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and Blakely v. Washington, ___ U.S. ___, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). Furthermore, Richardson claims that the state failed to meet its burden of proving that he was a third felony habitual offender, because there is no evidence in the record that the state showed the predicate offenses met the required initial burden. Richardson argues, however, that the state never produced the transcripts of the plea colloquy in either case. Richardson also urges that the predicate offense of simple burglary does not fit the criteria for use as a predicate offense for the life imprisonment enhancement under La. R.S. 15:529.1, because it only carries a possible sentence of zero to twelve years, not twelve years or more. Finally, he concludes that his adjudication as a third felony offender must be vacated.
The burden of proof in habitual offender proceedings under R.S. 15:529.1 has been stated as follows:
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do *267 this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that the defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights.
State v. Warfield, 37,616 (La.App.2d Cir.10/29/03), 859 So.2d 307, quoting, State v. Shelton, 621 So.2d 769 (La.1993)(footnotes omitted).
Louisiana R.S. 15:529.1 D(3) requires a trial court to provide written reasons for its habitual offender determination. However, any failure by the trial court to provide written reasons for the habitual felony offender adjudication constitutes harmless error. State v. Perkins, 99-1084 (La.App. 5th Cir.01/25/00), 751 So.2d 403, writ denied, XXXX-XXXX (La.12/15/00), 777 So.2d 476. Here, the record reflected that the trial court adequately stated the reasons for its determination. See La. C. Cr. P. art. 921; also see State v. Smith, XXXX-XXXX (La.App. 1st Cir.11/03/00), 769 So.2d 1280, writ denied, State ex rel. Smith v. State, XXXX-XXXX (La.12/14/01), 804 So.2d 630.
Moreover, the record supports the conclusion that the state proved beyond a reasonable doubt every essential element of the habitual offender bill under La. R.S. 15:529.1. State v. Shelton, supra. Certified copies of the bills of information from the two prior felonies charged in the habitual offender bill were introduced into evidence, and fingerprint experts confirmed that the fingerprints on both belonged to Richardson. The state also offered certified copies of the court minutes of both prior felonies. Both sets of court minutes reflected that Richardson was represented by counsel when each guilty plea was taken, with the trial court acknowledging that the pleas were taken as per Boykin v. Alabama. At no time did Richardson object to the introduction of the court minutes. Additionally, Richardson offered no affirmative evidence reflecting any infringement of his rights or procedural irregularity. The court properly found that the state met the initial burden and that Richardson failed to meet his burden. See State v. Shelton, supra.
Also, as noted by the state in brief, Richardson consented to the amendment of the habitual offender bill, thereby waiving any objection to its amendment or its timing. Furthermore, although La. R.S. 15:529.1 requires specific findings and reasons, the record reflects the trial court's reasons for adjudication stated at the adjudication proceeding. In any event, the defendant did not object to the adjudication. Thus, the failure to assign written reasons is harmless error. See State v. Perkins, supra.
Finally, it is clear that Apprendi has no application to the instant case. As noted in State v. Brown, 2003-2788 (La.07/06/04), 879 So.2d 1276, cert. denied, ___ U.S. ___, 125 S.Ct. 158, 160 L.Ed.2d 40 (2004), the Apprendi court specifically exempted the fact of a prior conviction from its holding. These arguments are without merit, as is this assignment of error.

*268 Excessive Sentence

In his final assignment of error, Richardson argues that the trial court erred in imposing an unconstitutionally excessive life sentence without benefit of parole, probation or suspension for an act arising out of an on-going family controversy, where there were mitigating circumstances.
The defense argues that the trial court focused only on past behavior  an offense that happened 25 years ago  and not this offense, in imposing sentence. Richardson notes that he was 46 years old at the time of the instant offense, and his most recent convictions were over 10 years old. He further notes that neither prior conviction was for a crime of violence. Richardson contends that the trial court failed to articulate adequate reasons for sentencing. Richardson also argues that the facts of this case do not support the trial court's conclusion about his so-called disregard for human life and property, and, that the sentence, although within statutory limits, is otherwise excessive.
In this case, La. R.S. 15:529.1(A)(1)(b)(ii) mandated a life sentence without benefits for Richardson for the following reasons: (1) he is a third felony offender; (2) the third felony (aggravated battery) is a crime of violence; (3) one of the two prior felonies (the simple burglary committed October 2, 1995) is punishable by imprisonment for 12 years or more; and, (4) one of the two prior felonies (the distribution of a Schedule II controlled dangerous substance, cocaine, committed October 19, 1993) is punishable by imprisonment for ten years or more.
Because the sentence imposed for the habitual offender adjudication is prescribed by statute, the trial court's compliance with La. C. Cr. P. art. 894.1 is not required. State v. Gay, 34,371 (La.App.2d Cir.04/04/01), 784 So.2d 714; State v. Owens, 32,642 (La.App.2d Cir.10/27/99), 743 So.2d 890, writ denied, XXXX-XXXX (La.09/29/00), 769 So.2d 553. It would be an exercise in futility for the trial court to discuss the factors enumerated in that article when the court had no discretion in sentencing the defendant. State v. Johnson, 31,448 (La.App.2d Cir.03/31/99), 747 So.2d 61, writ denied, 99-1689 (La.11/12/99), 749 So.2d 653, cert. denied, Johnson v. Louisiana, 529 U.S. 1114, 120 S.Ct. 1973, 146 L.Ed.2d 802 (2000).
As this court stated in State v. Ponsell, 33,543 (La.App.2d Cir.08/23/00), 766 So.2d 678, writ denied, 2000-2726 (La.10/12/01), 799 So.2d 490:
Although, in State v. Dorthey, 623 So.2d 1276 (La.1993), the Louisiana Supreme Court stated that courts have the power to declare a mandatory minimum sentence excessive under Article I, Section 20 of the Louisiana Constitution, this power should only be exercised in rare cases and only when the court is firmly convinced that the minimum sentence is excessive. (Citations omitted.)
Since the habitual offender law in its entirety is constitutional, the minimum sentences it imposes upon multiple offenders are also presumed to be constitutional. State v. Johnson, 97-1906 (La.03/04/98), 709 So.2d 672, 675; State v. Green, 38,335 (La.App.2d Cir.05/12/04), 873 So.2d 889, writ denied, XXXX-XXXX (La.11/24/04), 888 So.2d 227. The mandatory life sentences it requires are presumptively constitutional and should be accorded great deference by the judiciary. State v. Green, supra.
Johnson also held that the burden was on the defendant to rebut the presumption that a mandatory minimum sentence is constitutional. To do so the defendant must "clearly and convincingly show that he is exceptional, which in this context *269 means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case." Johnson, supra at 676.
Furthermore, a trial judge may not rely solely upon the nonviolent nature of the instant or past crimes as evidence which justifies rebutting the presumption of constitutionality. The lack of violence cannot be the only reason, or even the main reason for declaring such a sentence excessive. Johnson, supra; State v. Lindsey, 99-3256 (La.10/17/00), 770 So.2d 339.
When a defendant's motion for reconsideration urges merely that the sentence is excessive, he is relegated only to a claim of constitutional excessiveness. State v. Mims, 619 So.2d 1059 (La.1993).
The defendant's mandatory minimum sentence imposed pursuant to La. R.S. 15:529.1(A)(1)(b)(ii) is presumed to be constitutional. See State v. Green, supra, citing State v. Johnson, supra at 675. Moreover, it is clear from this record that Richardson has not met his burden of rebutting this presumption by showing that he is "exceptional." He has not shown that he is a victim of the legislature's failure to assign sentences that are meaningfully tailored to his culpability, the gravity of the offense, and the circumstances of the case. See State v. Johnson, supra. Richardson's past criminal history and the facts and circumstances of the instant case do illustrate his disregard for human life as stated by the trial court. He responded to his sister's verbal confrontation by viciously attacking her husband from behind with a crowbar, cracking his skull, and causing him a life-threatening injury. Nor may a trial judge rely solely upon the nonviolent nature of the past crimes as evidence which justifies rebutting the presumption of constitutionality. The lack of violence cannot be the only reason, or even the main reason for declaring such a sentence excessive. Johnson, supra. Clearly, the sentence in this matter was appropriate and the trial court did not err. This assignment is without merit.

CONCLUSION
For the foregoing reasons, the conviction and sentence of Fred Elvis Richardson is affirmed.
AFFIRMED.