900 So.2d 221 (2005)
STATE of Louisiana, Appellee
v.
Donald P. SANDERS, Appellant.
No. 39,645-KA.
Court of Appeal of Louisiana, Second Circuit.
April 6, 2005.
*222 Louisiana Appellate Project, by G. Paul Marx, Paula C. Marx, Lafayette, for Appellant.
Jerry L. Jones, District Attorney, David O. Harkins, Jr., Assistant District Attorney, for Appellee.
Before STEWART, GASKINS and CARAWAY, JJ.
STEWART, J.
Donald Sanders ("Sanders") was tried by jury and convicted of aggravated battery and illegal use of a dangerous weapon. He admitted to being a second felony habitual offender and was sentenced to serve the enhanced sentence of twelve years imprisonment at hard labor for aggravated battery, to run consecutively to a previously imposed sentence for aggravated battery after his probation was revoked because of the instant matter. Sanders was sentenced to serve two years imprisonment at hard labor for illegal use of a dangerous weapon, to run concurrently with the sentence imposed for aggravated battery. Following our review of the record, we affirm the defendant's aggravated battery conviction and sentence. The habitual offender adjudication is also affirmed.

FACTS
In May 2003, Brenda Brown had been dating Sanders for about three years, and they were living together in what she described as her home at 1105 South Ninth Street, in Monroe. Brown's disabled mother also lived in the home. On May 6, 2003, Brown and Sanders had an argument, and she asked the defendant to leave, but he refused. Later, while she and Sanders were at the Dollar Store, Brown left him, hurriedly returned home to get her mother out of the house, locked the front door, and left.
Later that evening, Brown arrived at the residence of her best friend, Deborah Hendrix ("Hendrix"). She told Hendrix about her fight with the defendant. At about midnight, Brown gave Hendrix the keys to her car and asked her to go to her house to get a change of clothes and to turn on some lights. Brown apparently thought that the defendant would not be at her home because she told him to leave. Hendrix took her boyfriend, Brian McNeal, with her.
Upon her arrival at Brown's home about 1:00 a.m., Hendrix used Brown's key to *223 open the door while McNeal waited in the car. Sanders stepped out from behind the door and began questioning Hendrix regarding Brown's whereabouts. He looked upset. As the defendant followed Hendrix through the house, Hendrix told the defendant that she did not know where Brown was located. Hendrix was unable to get any of Brown's clothes because the defendant was following her and making her nervous.
Sanders then followed Hendrix outside to the car. He got into the back seat of the vehicle and Hendrix told him to get out. He then walked to the driver's side of the vehicle and pulled the keys out of the ignition. Next, Sanders threatened to shoot Hendrix and McNeal, and began to walk to the house to get his gun. Hendrix and McNeal got out of the vehicle, and Hendrix used her cell phone to attempt to call the police. Before she could make the call, Sanders came back out with a gun, pointed it at her and demanded that she surrender her cell phone. Hendrix complied. Sanders then asked Hendrix for some money, but she said she did not have any.
As McNeal turned to run away, the defendant hit McNeal in the back of the head with the gun. The gun accidently fired off one shot. However, Sanders then fired two more shots directly at McNeal as McNeal ran down the street. After the defendant went inside the house, Hendrix went down the street and located McNeal. McNeal's head was bloody and he had a gash in the back of his head. They used a neighbor's telephone to call the police.
Sanders was charged by bill of information with armed robbery, aggravated battery, and illegal use of a dangerous weapon. The state filed an amended bill of information on June 3, 2003, to which he entered a plea of not guilty.
At the trial on the merits, Hendrix and McNeal testified to the facts and circumstances of the crimes as related hereinabove. The state further presented the testimony of Detective Roderick Jackson of the Monroe Police Department. Detective Jackson testified that he observed abrasions on McNeal's head. During the course of the investigation of the crimes, Detective Jackson took a recorded statement from the defendant, which was freely and voluntarily given. During that statement, Sanders related the same basic facts as testified to by Hendrix and McNeal. Sanders admitted to Detective Jackson that he was behind the door when Hendrix arrived. However, he claimed that he did not point the gun at Hendrix, but rather that he had the gun visibly displayed in the waistband of his pants, when he took the cell phone from Hendrix. Sanders also stated that he struck McNeal in the head with the barrel of the gun when McNeal came to Hendrix's aid as she scuffled with him for the gun. Sanders further admitted firing one gunshot at McNeal and Hendrix as they were going down the street.
During the trial, the defense called Brown as a witness, who testified regarding the circumstances of her fight with the defendant and her request for Hendrix to go secure her home. The parties stipulated that if Corporal Kevin Willis of the Monroe Police Department were called to testify, he would relate that after speaking to McNeal, he put in his report that the defendant fired the gun twice in the air, and then fired two or more shots at McNeal and Hendrix after they began to flee on foot. The jury acquitted the defendant of armed robbery, and convicted the defendant of aggravated battery and illegal use of a dangerous weapon.
The defendant was subsequently charged as a habitual offender. The habitual *224 offender bill alleged that on or about April 7, 2004, the defendant was convicted in this proceeding of a felony, "TO-WIT: AGGRAVATED BATTERY AND ILLEGAL USE OF A DANGEROUS WEAPON, WHICH OFFENSE WAS COMMITTED ON MAY 6, 2003." The habitual offender bill further alleged that the defendant had previously been convicted of the felony offense of aggravated battery on June 21, 2002, Docket # 01-F0726.
At the habitual offender and sentencing hearing, the defendant admitted to being a second felony habitual offender. He was sentenced to serve the enhanced sentence of twelve years imprisonment at hard labor for aggravated battery, to run consecutively with the previously imposed sentence. The defendant was sentenced to serve two years imprisonment at hard labor for illegal use of a dangerous weapon, to run concurrently with the sentence imposed for aggravated battery. This appeal ensued.

DISCUSSION

Sufficiency of the Evidence
The defendant argues that he acted in self-defense. He contends that the evidence presented at trial showed that he was living with Brown, and that he was attacked by Hendrix and McNeal in his own residence early in the morning. The defendant argues that Hendrix and McNeal had no right to be there, and he only used force as needed to make them leave. He notes that justification is an affirmative defense, and suggests that justification can be based on circumstances which make the accused's conduct excusable on policy grounds, established by a preponderance of the evidence. The defendant asserts that this case involved two people who intervened in a domestic squabble that was none of their business, and created a second conflict by going to the defendant's residence and trying to remove property. He concludes that Hendrix and McNeal had no right to attempt to remove property, that he was justified in resisting them, and that the convictions are unjust.
The state summarizes the applicable law and relates the pertinent facts. The state concludes that the defendant was the sole aggressor and brought the conflict about. It asserts that there was no justification for the defendant to hit McNeal with the gun and then shoot the gun at Hendrix and McNeal as they ran away. The state notes that neither Hendrix nor McNeal had a gun. It also notes that Hendrix and McNeal were at Brown's home with her permission and had permission to use her car. The state argues that the defendant's own recorded statement shows that he was the aggressor in the conflict, and made no effort to discontinue the difficulty or to withdraw in good faith.
Although the record does not reflect that defendant filed a motion for post-verdict judgment of acquittal pursuant to La. C. Cr. P. art. 821, this court will consider sufficiency arguments in the absence of such a motion. State v. Green, 28,994 (La.App. 2d Cir.2/26/97), 691 So.2d 1273.
In reviewing the sufficiency of the evidence to support a conviction, an appellate court is controlled by the standard established in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The court must determine whether the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proven beyond a reasonable doubt. State v. Nealy, 450 So.2d 634 (La.1984); State v. Doby, 540 So.2d 1008 (La.App. 2d Cir.1989), writ denied, 544 So.2d 398 (La.1989).
*225 This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App. 2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La. App. 2d Cir.9/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, Allen v. Louisiana, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. White, 28,095 (La.App. 2d Cir.5/8/96), 674 So.2d 1018, writ denied, 96-1459 (La.11/15/96), 682 So.2d 760, writ denied, 98-0282 (La.6/26/98), 719 So.2d 1048.
The standard of proof when a defendant claims self-defense in a non-homicide case is a preponderance of the evidence. State v. Freeman, 427 So.2d 1161 (La.1983); State v. Updite, 38,423 (La.App. 2d Cir.6/23/04), 877 So.2d 216, writ denied, XXXX-XXXX (La.11/24/04), 888 So.2d 229; State v. Braswell, 605 So.2d 702 (La.App. 2d Cir.1992). The state must then prove beyond a reasonable doubt that the defendant did not act in self-defense. State v. Scales, 93-2003 (La.5/22/95), 655 So.2d 1326, cert. denied, Scales v. Louisiana, 516 U.S. 1050, 116 S.Ct. 716, 133 L.Ed.2d 670 (1996), rehearing denied, 516 U.S. 1142, 116 S.Ct. 977, 133 L.Ed.2d 897 (1996); State v. Updite, supra. The issue of self-defense requires a dual inquiry, an objective inquiry into whether the force used was reasonable under the circumstances and a subjective inquiry into whether the force was apparently necessary. State v. Robinson, 37,043 (La.App. 2d Cir.5/14/03), 848 So.2d 642, and citations therein. A person who is the aggressor or who brings on the difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict. La. R.S. 14:21; State v. Updite, supra; State v. Robinson, supra.
A battery is the intentional use of force or violence upon the person of another; or the intentional administration of a poison or other noxious liquid or substance to another. La. R.S. 14:33. According to La. R.S. 14:34, aggravated battery is a battery committed with a dangerous weapon. "Dangerous weapon" includes any gas, liquid *226 or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm. La. R.S. 14:2(3).
The facts contained in the record clearly support the conclusion that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime of aggravated battery had been proven beyond a reasonable doubt. State v. Nealy, supra; State v. Doby, supra. The trial testimony of the victim and witness to the crime proved that the defendant committed a battery by intentionally using force or violence upon the victim, and the battery was committed with a dangerous weapon  a handgun. La. R.S. 14:33 and 14:34. The record lacks any credible evidence to support the defense's argument that the crime was committed in self-defense. In fact, the trial testimony of the defendant's ex-girlfriend specifically disputes the claim that the defendant was justified in committing the crime to defend and protect his home and property from unauthorized intruders. Thus, the defendant clearly failed to meet his burden of proving self-defense by the preponderance of evidence. State v. Freeman, supra; State v. Updite, supra; State v. Braswell, supra. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, supra. This assignment is therefore without merit.

Habitual Offender Bill
The defendant argues that the habitual offender bill is defective because it does not specify which conviction the state seeks to enhance. He cites jurisprudence holding that the enhancement can only apply to a single count of conviction. The defense argues that the two offenses arise from a single incident, and therefore only one is subject to habitual offense enhancement. He contends that it is not clear from the language in the habitual offender bill which offense the district attorney wanted to enhance, and asserts that this prejudiced the defendant.
The state argues that the defense made no contemporaneous objection at the habitual offender hearing and therefore any irregularity was waived. In any event, the state notes that the transcript of the sentencing hearing clearly shows that the trial court enhanced the sentence for aggravated battery. It concludes that the defendant's argument has no merit.
As the state notes in brief, there was no contemporaneous objection which raised this claim at the habitual offender hearing. An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. Thus, this assignment of error is not properly before this court and need not be addressed on the merits. La. C. Cr. P. art. 841; State v. Griffin, 34,066 (La.App. 2d Cir.11/1/00), 771 So.2d 814; State v. Bosley, 29,253 (La. App. 2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333; State v. Hamilton, 594 So.2d 1376 (La.App. 2d Cir.1992). Also see State v. Alexander, 551 So.2d 34 (La.App. 4th Cir. 1989), in which the court noted that the defendant's guilty plea was considered to be a waiver of any objection to the defect in the multiple bill. Therefore, the merits of this assignment of error need not be addressed.

CONCLUSION
For the foregoing reasons, the defendant's aggravated battery conviction and sentence and adjudication as a second felony offender are affirmed.
AFFIRMED.