780 So.2d 598 (2001)
STATE of Louisiana, Appellee,
v.
Eddie L. WOODRUFF, Appellant.
No. 34,454-KA.
Court of Appeal of Louisiana, Second Circuit.
February 28, 2001.
*599 Louisiana Appellate Project by Carey J. Ellis, III, Rayville, Scott McElroy, Bastrop, Counsel for Appellant.
Richard Ieyoub, Attorney General, Baton Rouge, William R. Coenen, Jr., District Attorney, Rayville, Penny Douciere, Rayville, John M. Lancaster, Lake Providence, Assistant District Attorneys, Counsel for Appellee.
Before BROWN, GASKINS and KOSTELKA, JJ.
KOSTELKA, Judge.
After a unanimous jury found Eddie L. Woodruff ("Woodruff") guilty as charged of one count of possession of a firearm by a convicted felon, La. R.S. 14:95.1, the court imposed the minimum mandatory sentence of ten years at hard labor, without benefits and with credit for time served, plus a fine of $1,000 and costs. On appeal, Woodruff argues only that the evidence is insufficient to support his conviction. We affirm.

*600 FACTS
On September 26, 1998, after Woodruff had been celebrating his birthday and consuming alcoholic beverages, he received a gunshot wound to the back of his lower left thigh which exited the back of his left knee. Woodruff was transported to the West Carroll Parish Hospital emergency room in Oak Grove, Louisiana, where he informed his treating physician that he had been shot at six times from a passing vehicle. The two eyewitnesses to the shooting initially corroborated that Woodruff had been injured in a drive-by shooting. Later, however, one of those witnesses, Darius Lewis ("Lewis"), implicated Woodruff as the perpetrator of the accidental, but self-inflicted, wound. Because of a previous felony conviction, Woodruff was charged with possession of a firearm by a convicted felon.

DISCUSSION
A claim of insufficient evidence is better addressed by a motion for post-verdict judgment of acquittal. See La. C.Cr.P. art. 821. Nevertheless, this court has held that it may also be raised by assignment of error on appeal. State v. Green, 28,994 (La.App.2d Cir.02/26/97), 691 So.2d 1273.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bosley, 29,253 (La.App.2d Cir.04/02/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La. App.2d Cir. 09/25/98), 719 So.2d 610, writ denied, 98-2723 (La.02/05/99), 737 So.2d 747.
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. Bosley, supra.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. White, 28,095 (La.App.2d Cir.05/08/96), 674 So.2d 1018, writ denied, 96-1459 (La.11/15/96), 682 So.2d 760, writ denied, 98-0282 (La.06/26/98), 719 So.2d 1048.
La. R.S. 14:95.1 provides in pertinent part that it is unlawful for any person who has been convicted of a crime of violence, as defined in La. R.S. 14:2(13), which is a felony, to possess a firearm within ten years of the completion of the sentence imposed.
To convict a defendant of the charged offense, the state must prove beyond a reasonable doubt: (1) that the defendant possessed a firearm; (2) a previous conviction of an enumerated felony; (3) absence of the ten-year period of limitation; and, (4) general intent to commit *601 the offense. State v. Husband, 437 So.2d 269 (La.1983); State v. Tatum, 27,301 (La. App.2d Cir.09/27/95), 661 So.2d 657.
Woodruff conceded to his 1994 conviction for aggravated criminal damage to property, which is a crime of violence listed in La. R.S. 14:2(13)(u), and that he was aware of the fact that because of that conviction, he was prohibited from possessing a firearm. On appeal, Woodruff argues that the state failed to prove he "possessed" a firearm.
Officer Robert Epting ("Epting") of the Oak Grove Police Department testified that he responded to an anonymous report of a shooting on McIntyre Street in Oak Grove at 11:35 p.m. on September 25, 1998. He went to the scene but saw nothing. About ninety minutes later, Epting responded to a call regarding a shooting victim at West Carroll Memorial Hospital. Lewis and Woodruff's sister, Shawanda, were present and claimed that Woodruff had been in a drive-by shooting which occurred at the "old Combs McIntyre lot," a school playground at the time of this incident.
When Epting took the witnesses to the alleged scene of the shooting, he could not find any blood, cartridges or other evidence of a drive-by shooting. However, when Epting went to a location behind Lewis's house at the end of a dead-end alley, he found a pool of blood. He followed a trail of blood stains from there to Lewis's mother's trailer home. Due to the presence of fences and the narrowness of the paths/alleys in the area, Epting felt that it would be impossible for someone to commit a drive-by shooting in the area where the blood was found.
According to Epting, when he confronted Lewis, who was at his mother's home, Lewis "broke down and admitted that it hadn't been no drive by and that Woodruff had a weapon and had accidentally shot his self."
Lewis's mother told Epting she was not going to get into any trouble over this incident and retrieved a pair of wet, blood-soaked shorts which were hidden in her home.
Dr. Llewellyn Simon ("Simon"), a physician at the West Carroll Hospital, treated Woodruff on the night of the shooting for two gunshot wounds on the left leg. He also testified as an expert in internal medicine. Simon indicated that on the night of the shooting, Woodruff was wearing only his underwear and claimed he had been shot at six times by a drive-by shooter, although he had only received the left leg wounds. Simon found no powder residue on the flesh but noted that the firing of a bullet through a cloth object would prevent powder residue from being found on the flesh. While Simon testified it was "possible" that Woodruff had been in a drive-by shooting, he would have had to have been in the "awkward position" of lying down facing toward where the gun was fired. Simon testified that it was more likely Woodruff was shot from a gun fired from an "up down" position. He felt that the upper wound was the entry wound because it was smaller than the wound at the knee.
Lewis, age fourteen at the time of this incident and a friend of Woodruff, testified that he was with him on the night of the shooting, celebrating Woodruff's birthday. When the party broke up late in the evening, Woodruff, Shawanda and Lewis walked through Lewis's grandfather's yard while going to Lewis's nearby home. Woodruff had been drinking "[a] little bit" and said he was going to shoot some bottles. Woodruff pulled out a black pistol, looked at some bottles on the Combs McIntyre property, and fired several shots. Although Lewis looked away when the firing began, he saw Woodruff lying on the ground when the firing ended. Woodruff said, "I did it again." To Lewis, this meant the defendant had shot himself again. Lewis helped Woodruff get to Lewis's mother's house and then into a car and to the hospital. Woodruff's shorts were removed from him at the scene of the shooting. Lewis admitted he lied to the *602 police when he initially said his friend had been injured in a drive-by shooting.
The shorts had a hole in the left rear pocket and bore what appeared to Lewis to be gunpowder residue. Lewis didn't know what happened to the gun which never was recovered even though the police searched the scene again in daylight.
Police Chief Johnny Moss testified that a cartridge fell out of the shorts when the police initially looked at them at the police department. The crime lab determined that the hole in Woodruff's shorts came from a bullet fired at a distance of less than twelve inches.
Lewis Russell, Chief Criminal Deputy of the West Carroll Sheriffs Department, testified about his examination of the physical evidence. The cartridge that fell out of Woodruff's shorts was a live round. It was a 9mm Luger, which is commonly used in semi-automatic handguns. The bullet hole in the shorts was seven or eight inches below the waist band.
Debra Lewis, Lewis's mother, testified that she was inside her home when she heard the shots. She went outside and saw Woodruff on the ground. She removed Woodruff's shorts while getting him into the car and later gave them to Epting in the same condition in which she originally obtained them.
Woodruff testified that he had not shot at any bottles, he did not have a bullet in his pocket, and he did not have a gun on him that evening. Woodruff admitted the prior felony conviction. When he was paroled, Woodruff was aware that he was not to possess firearms. He did not recall telling the police that he had been drunk when the shooting occurred. He denied shooting himself on this occasion but conceded he had been shot three times in the past. Woodruff testified that somebody ran up less than twelve inches from him and shot him, and that Officer Russell planted the cartridge in his clothing.
When viewed in the light most favorable to the state, we find this evidence sufficient to support Woodruff's conviction. Lewis was not only an eyewitness to Woodruff's possession of a firearm, but also heard him fire the weapon. This testimony alone is sufficient proof of Woodruff's possession of a firearm. Woodruff's contrary accounts were obviously rejected by the jury. Moreover, Simon testified that the wounds were consistent with Woodruff's shooting himself, and that the claim of being shot was dubious. Nor does the physical evidence support Woodruff's testimony. The shorts he was wearing apparently bore powder stains and a hole which were compatible with an accidental, self-inflicted gunshot. Moreover, the live round which fell from the pocket of the shorts is certainly suggestive of Woodruff's possession of a weapon. Any rational trier of fact could have found the state proved all the elements of the offense beyond a reasonable doubt. Therefore, the assigned error lacks merit.

CONCLUSION
For the foregoing reasons, we affirm Woodruff's conviction and sentence.
AFFIRMED.