921 So.2d 226 (2006)
STATE of Louisiana, Appellee,
v.
Ronnie QUALLS, Appellant.
No. 40,630-KA.
Court of Appeal of Louisiana, Second Circuit.
January 27, 2006.
Rehearing Denied March 2, 2006.
*231 Culpepper & Carroll, PLLC by Bobby L. Culpepper, Teresa Culpepper Carroll, Jonesboro, for Appellant.
Walter E. May, Jr., District Attorney, Douglas L. Stokes, Jr., Robert A. Moore, Assistant District Attorney, for Appellee.
Before WILLIAMS, CARAWAY & PEATROSS, JJ.
PEATROSS, J.
Defendant, Ronnie Qualls, was convicted of possession of a firearm by a convicted felon and assault by discharge of a firearm. He was sentenced to 12 years at hard labor, without benefit, and ordered to pay a $1,000 fine on the possession conviction. Defendant was adjudicated a third-felony offender, and, as such, sentenced to 10 years on the assault conviction, without benefit. The two sentences were to run concurrent. Defendant appeals and, for the reasons stated herein, we affirm.

FACTS
Although the eyewitness' testimony at trial was conflicting on several factual issues, all of the witnesses agreed on the following facts. On May 27, 2003, Defendant and Phillip Andrews ("Andrews") agreed to meet for a fight on the parking lot of a business in Jonesboro called "Jody's." Andrews threw the first punch and subsequently won the fight to the point that spectators had to forcibly pull Andrews off of Defendant. Afterwards, Defendant, a convicted felon,[1] ran to his father's truck, retrieved a pistol from inside the cab and first fired it in the air. Several eyewitnesses identified the gun as a specific .40-caliber Ruger pistol that Andrews had sold to Defendant on an earlier date. Defendant then chased Andrews, firing the pistol several more times. Thereafter, Defendant fled into some nearby woods, leaving his father's truck behind.
The eyewitnesses were all friends or family to one or both of the combatants. Some of the eyewitnesses testified that Andrews also brought a pistol to the fight, wrapped in a bandanna. These witnesses testified that Andrews' first blow in the fight was to hit the unarmed Defendant in the head with the pistol, instead of his fist. They further testified that they took Andrews' pistol away from him to make it a fair fight. Andrews and other witnesses denied he ever had a pistol during the fight.
None of the witnesses testified that, after Andrews was pulled off of Defendant, he made any further attempt to attack Defendant. Some of the witnesses testified that they and Andrews began moving away when they saw Defendant going to his truck. All of the witnesses testified that neither Andrews nor any bystander pulled or fired a gun after Defendant left the fight and went to his truck. Several of the witnesses testified that Defendant fired the first shot in the air, then ran after the unarmed Andrews, firing several shots, and shouting words to the effect, "I'll kill you, I'll kill you." Andrews and all of the bystanders began running after the first shot was fired.
There is some dispute as to the time this incident occurred. The victim and some witnesses placed the time around mid-afternoon. Other witnesses, including the chief of police, placed it in the evening, around 8:00 p.m. The police were quickly *232 called after the shooting. They found Defendant's father's truck and two fired .40-caliber pistol cartridge casings at the scene. The pistol was never recovered.
The matter went to jury trial. During the voir dire, it became quickly apparent that Defendant's parents were well-respected members of the community. Mr. Qualls was a longtime employee of a local paper mill and Mrs. Qualls was a longtime educator. Both were very active in community affairs. A relevant point in this appeal is the fact that Mr. and Mrs. Qualls and their son, Defendant, are African-American. Many of the jurors, identified as African-American, stated they knew or were close friends with the Qualls family. Many stated having a very high opinion of the family. Several prospective jurors who knew the Qualls stated that knowing them would affect their ability to act as a juror in the case. Of the State's 11 peremptory challenges, 9 were against African-Americans. Of Defendant's 12 peremptory challenges, all were against white prospective jurors.
At the conclusion of the jury selection, Defendant asserted a Batson[2] challenge, based on 9 of the State's 11 peremptory challenges having been against African-Americans. The trial court agreed, finding this established a prima facia case of purposeful discrimination. The State provided reasons for each peremptory challenge. The trial court denied Defendant's Batson challenge. The State then made a "reverse Batson" challenge, which was also denied by the trial court.
During the trial, Defendant stipulated that he was a convicted felon. After Wade Singleton ("Singleton"), a witness to the fight, testified on direct that he saw Andrews bring a gun to the fight, the State attempted to question him about statements he made to the police following the fight wherein he did not mention Andrews having a gun. Defendant objected to the State's impeaching its own witness. The State responded that La. C.E. art. 607A allows the credibility of a witness to be attacked by either party, including the party calling him. The trial court denied the objection. The State then asked Singleton if he had told the investigating officers about Andrews having a gun during his fight with Defendant. Singleton insisted he had told the officers about the gun. The officers who took Singleton's statement denied any such statement.
While cross-examining Jonesboro Chief of Police, G. Wesley Horton, Defendant's trial counsel attempted to ask the chief if the police department had located and served Kevin Jackson ("Jackson") with the subpoena to appear at trial. Jackson and Defendant had driven by and exchanged words with Andrews before the fight. Jackson had also been present at the fight. The State had subpoenaed Jackson for trial. Defendant had not. After the witnesses had been sequestered, the State released Jackson without calling him as a witness. Defendant's counsel then attempted to ask Chief Horton if Jackson had also been served with an outstanding bench warrant when he was served with the subpoena to appear at trial. The State objected, asserting that the question had no relevance to the issues at trial. Defendant's counsel argued that the State had subpoenaed Jackson, but he had not appeared for trial. The trial court sustained the State's relevancy objection. At the State's request, the trial court admonished the jury to disregard Defendant's question as to a pending bench warrant for Jackson.
After the State rested, Defendant's counsel called his parents to testify. Both *233 testified that Defendant lived in their home. Mr. Qualls testified that he kept a.22-caliber pistol in his truck and that it was in his truck when Defendant used it on the night of the fight. Both parents denied any knowledge of Defendant owning a pistol. Mr. Qualls testified that sometime after the shooting, Singleton and Andrews came to his house. Andrews stayed outside and Singleton came in and told him and his wife that Andrews was willing to drop the charges for $15,000.
The jury found Defendant guilty as charged. Defendant filed a motion for new trial, and a motion for post-verdict judgment of acquittal. Both were denied by the trial court.
After Defendant was convicted, the State filed an "Amended Bill of Information" alleging that, with the present conviction, Defendant was now a third-felony offender, having first been convicted "on February 8, 1994, in the matter styled, `State of Louisiana v. Ronnie Qualls,' which bears number 31,008 on the criminal docket of the Second Judicial District Court," and, second, having been convicted "on June 21, 1999 in the matter styled `State of Louisiana v. Ronnie Qualls,' which bears number 34,394 on the criminal docket of the Second Judicial District Court."
At the habitual offender hearing, the State introduced evidence that, in docket number 34,949, Defendant was convicted in June 21, 1999, for possession of cocaine and received an agreed-upon sentence. The exhibits included, but were not limited to, the bill of information, filed March 4, 1999 (State's Exhibit HE# 1); form entitled, "Determination Of Understanding Of Constitutional Rights, Nature of Charge and Consequences of Guilty Plea," filed in docket number 34,949 on June 21, 1999 (State's Exhibit HE# 2); Minutes for docket number 34,949, showing Defendant's guilty plea and sentence on June 21, 1999 (State's Exhibit HE# 3); and judgment of conviction, filed June 21, 1999 (State's Exhibit HE# 4).
The State called Chief Horton, who testified about a September 1998 controlled purchase of cocaine from Defendant which resulted in the March 4, 1999 bill of information in docket number 34,949. Chief Horton identified Defendant as the one arrested in the matter.
When the State sought to question Chief Horton about the certified copies of the court records for docket number 34,949, Defendant objected, noting he was not the proper person to identify the court documents. The trial court allowed some questioning. Chief Horton testified that the social security number found on the judgment of conviction in docket number 34,949 was the same social security number obtained from Defendant when he was initially arrested on the charge.
Laura Culpepper, Deputy Clerk for the Jackson Parish Clerk of Court, testified as to the authenticity of State exhibits. With her testimony, all exhibits were introduced into evidence without objection from Defendant.
Thereafter, the State sought to question Deputy Clerk Culpepper regarding why the clerk's office had not produced records regarding criminal docket number 31,008. Defendant objected to the questioning, which was denied by the trial court. The deputy clerk testified that the records for docket number 31,008 had not been produced because the conviction had been expunged, and the clerk was unsure if they could be produced, absent a court order. On cross, the deputy clerk acknowledged that there had been no subpoena of the records, just merely an oral request. The trial court ordered the records for docket number 31,008 be produced.
*234 The State then recalled Chief Horton, who testified about the October 16, 1993 arrest of Defendant for possession of crack cocaine. Deputy Clerk Culpepper was recalled to identify records relating to the conviction in docket number 31,008. The trial court allowed the records of docket number 31,008 to be introduced into evidence. The State filed copies of the judgment of conviction in docket number 31,008 (State's Exhibit # HE-7); and the "Determination Of Understanding Of Constitutional Rights, Nature of Charge and Consequences of Guilty Plea," filed in docket number 31,008. (State's Exhibit # HE-8.)
After allowing the parties ten days to file briefs, the trial court denied Defendant's objections and motion to quash, finding Defendant to be a third-felony offender. Prior to sentencing, Defendant filed a writ application, which was denied by this court, finding Defendant had an adequate remedy on appeal. State v. Qualls, 40,036-KW (La.App.2d Cir.3/24/05), unpublished. The trial court, after a thorough review of the mitigating and aggravating factors contained in La. C. Cr. P. art. 894.1, sentenced Defendant on the possession conviction to 12 years at hard labor, without benefit of probation, parole or suspension of sentence, and ordered Defendant to pay a fine of $1,000.
As to the assault by the discharge of a firearm conviction, the trial court initially sentenced Defendant to five years at hard labor. Due to Defendant's status as a habitual offender, this sentence was vacated, and Defendant was sentenced to ten years at hard labor, to run concurrent with the sentence in count one.
This appeal ensued.

DISCUSSION
Defendant asserts the following assignments of error (verbatim):
1. The district court erred, as a matter of law, in denying defendant's Batson challenge and allowing an all-white jury to be seated when the defendant was black.
2. The district court erred, as a matter of law, in allowing the state to impeach its own witness, Wade J. Singleton.
3. The district court erred, as a matter of law, in instructing the jury to disregard information about an outstanding bench warrant for Kevin Jackson and in not allowing counsel for defendant to pursue same.
4. The district court erred, as a matter of law, in denying defendant's motion for a new trial.
5. The district court erred, as a matter of law, in denying defendant's motion in arrest of judgment.
6. The district court erred, as a matter of law, in denying defendant's motion for a post verdict judgment of acquittal.
7. The district court erred, as a matter of law, in finding the defendant to be a habitual offender.
8. The district court erred, as a matter of law, in imposing an excessive sentence.

Assignments of Error Numbers Four, Five and Six: Motions for new trial, arrest of judgment and post-verdict judgment of acquittal
In these assignments, Defendant argues that the evidence was insufficient to convict him, considering the perjury committed by the victim, and there was sufficient evidence of Defendant having to defend himself. We disagree.
*235 La. R.S. 14:95.1 provides, in pertinent part:
A. It is unlawful for any person who has been convicted of a crime of violence as defined in R.S. 14:2(13) which is a felony or simple burglary, burglary of a pharmacy, burglary of an inhabited dwelling, unauthorized entry of an inhabited dwelling, felony illegal use of weapons or dangerous instrumentalities, manufacture or possession of a delayed action incendiary device, manufacture or possession of a bomb, or any violation of the Uniform Controlled Dangerous Substances Law [FN1] which is a felony, or any crime which is defined as a sex offense in R.S. 15:541(14.1), or any crime defined as an attempt to commit one of the above-enumerated offenses under the laws of this state, or who has been convicted under the laws of any other state or of the United States or of any foreign government or country of a crime which, if committed in this state, would be one of the above-enumerated crimes, to possess a firearm or carry a concealed weapon.
B. Whoever is found guilty of violating the provisions of this Section shall be imprisoned at hard labor for not less than ten nor more than fifteen years without the benefit of probation, parole, or suspension of sentence and be fined not less than one thousand dollars nor more than five thousand dollars.
C. Except as otherwise specifically provided, this Section shall not apply to the following cases:
(1) The provisions of this Section prohibiting the possession of firearms and carrying concealed weapons by persons who have been convicted of certain felonies shall not apply to any person who has not been convicted of any felony for a period of ten years from the date of completion of sentence, probation, parole, or suspension of sentence.
La. R.S. 14:37.4 provides:
A. Aggravated assault with a firearm is an assault committed by the discharge of a firearm.
B. For the purposes of this Section, "firearm" is defined as an instrument used in the propulsion of shot, shell, or bullets by the action of gunpowder exploded within it.
C. Whoever commits an aggravated assault with a firearm shall be fined not more than five thousand dollars, or imprisoned for not more than five years, with or without hard labor, or both.
Again, Defendant argues that the evidence was insufficient, as a matter of law, to convict him of the two firearm offenses. When issues are raised on appeal, both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven *236 beyond a reasonable doubt. Jackson v. Virginia, supra; State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Murray, 36,137 (La.App.2d Cir.8/29/02), 827 So.2d 488, writ denied, 02-2634 (La.9/05/03), 852 So.2d 1020. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La. App.2d Cir.8/30/02), 827 So.2d 508, writ denied, State ex rel. Gilliam v. State, 02-3090 (La.11/14/03), 858 So.2d 422.
After convictions, Defendant filed motions for post-verdict judgment of acquittal and for new trial. La. C. Cr. P. art. 821 provides that a motion for post-verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty. This is a question of legal sufficiency. State v. Combs, 600 So.2d 751 (La.App. 2d Cir.1992), writ denied, 604 So.2d 973 (La. 1992). La. C. Cr. P. art. 851(1) provides that the court shall grant a motion for new trial whenever the verdict is contrary to the law and the evidence, i.e., that the evidence was insufficient to sustain the conviction. A motion for new trial presents only the issue of the weight of the evidence. Under this article, the trial judge has wide discretion to determine the weight of the evidence. The refusal to grant such a motion is not subject to appellate review, except for error of law. State v. Mitchell, 26,070 (La.App.2d Cir.6/22/94), 639 So.2d 391, writ denied, 94-1981 (La.12/16/94), 648 So.2d 387, citing Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982); State v. Robinson, 624 So.2d 1260 (La.App. 2d Cir. 1993), writ denied, 93-2899 (La.2/11/94), 634 So.2d 372; State v. Thomas, 609 So.2d 1078 (La.App. 2d Cir.1992), writ denied, 617 So.2d 905 (1993); State v. Korman, 439 So.2d 1099 (La.App. 1st Cir. 1983). Defendant's argument centers around the question of sufficiency of evidence, an issue properly raised in the trial court by a motion for post-verdict judgment of acquittal under La. C. Cr. P. art. 821; State v. Korman, supra.

Possession of a Firearm by a Convicted Felon
This conviction does not appear to be much in dispute. La. R.S. 14:95.1 provides, in pertinent part, that it is unlawful for any person who has been convicted of simple burglary to possess a firearm within ten years of the completion of the sentence imposed. To convict a defendant of the charged offense, the state must prove beyond a reasonable doubt: (1) that the defendant possessed a firearm; (2) a previous conviction of an enumerated felony; (3) absence of the ten-year period of limitation; and (4) general intent to commit the offense. State v. Husband, 437 So.2d 269 (La.1983); State v. Woodruff, 34,454 (La.App.2d Cir.2/28/01), 780 So.2d 598.
During the trial, Defendant admitted his 1999 conviction for possession of cocaine. The State also introduced evidence of that conviction. The only contested fact, therefore, was whether Defendant, a convicted felon, possessed a firearm. To prove this element, the State presented several eyewitnesses who each stated that they saw Defendant go to his father's truck, pull out a pistol, fire it in the air once and then shoot several times at Andrews. Some of *237 the eyewitnesses were able to identify the firearm as a specific .40-caliber Ruger pistol Defendant had purchased previously from Andrews. The police found two fired .40-caliber cartridge casings in the area where Defendant fired the pistol.
In his brief, Defendant argues "self defense." The jurisprudence has developed a doctrine of "necessity" which expands the realm of justification, but this theory has a very limited application in felony firearm possession cases. State v. Shed, 36,321 (La.App.2d Cir.9/18/02), 828 So.2d 124, writ denied, 02-3123 (La.12/19/03), 861 So.2d 561. "Necessity," when raised as a defense to the illegal possession of a firearm, entails proof that the threat of force by another is imminent and apparent and that the person threatened has no reasonable alternative but to possess the firearm. Id. Justification is an affirmative defense which the accused must establish by a preponderance of the evidence. State v. Cheatwood, 458 So.2d 907 (La.1984); State v. Shed, supra; State v. Brazil, 34,341 (La.App.2d Cir.4/4/01), 784 So.2d 734.
The flaw in Defendant's "self defense" argument, as it relates to the conviction for possession of a firearm by a convicted felon, is that the jury could have easily found that he first possessed the pistol when he voluntarily drove to the parking lot to fight Andrews. Nothing in this record supports the "necessity" of a convicted felon bringing a pistol to a fist fight, nor does the record support the argument that Defendant had no reasonable alternative but to possess the firearm to avoid imminent peril of great bodily harm. Defendant could have just not brought a pistol or just not have gone to the fight.
These assignments of error, as they relate to the conviction for possession of a firearm by a convicted felon, have no merit.

Assault by Discharge of a Firearm
La. R.S. 14:37.4 defines aggravated assault with a firearm as "an assault committed by the discharge of a firearm." All of the State's witnesses testified that Defendant fired his pistol several times. A jury could have easily found that Defendant discharged a firearm. Accordingly, the sole issue is whether Defendant's shooting of the pistol constituted an assault of Andrews. La. R.S.14:36 defines an assault as "an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery." Several of the witnesses testified that it did not appear Defendant was actually trying to hit the victim, but this distinction does not aid Defendant because he was clearly intentionally placing Andrews in a reasonable apprehension of receiving a battery.
We note that the victim also voluntarily went to Jody's to engage in a fight with Defendant and there is some evidence that Andrews went to this fight armed with a gun, with the stated purpose of inflicting serious bodily harm on Defendant. The victim even struck the first blow in the fight. There is no dispute in the evidence that the victim was an aggressor in the fight. We conclude, however, that the jury could have easily found that, when the offense of assault by the discharge of a firearm was committed, the fight was over. The evidence establishes that, after the victim got the better of Defendant, bystanders pulled the two apart, thereby ending the fight. There is no evidence the victim made any attempt to further attack Defendant after the two were pulled apart. It was after the fight was over that Defendant went to his truck and got a pistol. There was no evidence that, at the point this gun was produced, the victim was posing any further threat towards Defendant. Some evidence indicates the victim *238 was even running away from Defendant.
Accordingly, the offense occurred when Defendant began firing the pistol. (Before discharge, he would have only been guilty of misdemeanor assault.) The jury could have easily found that, at that time, when Defendant began discharging the firearm, force was clearly an unnecessary element of the mutual fight and unanticipated by the victim, vitiating any consent the victim may have to the risk of receiving a battery from Defendant.
The fact that the fight was over when the shots were fired also weakens Defendant's self-defense argument. The standard of proof when a defendant claims self-defense in a non-homicide case is a preponderance of the evidence. State v. Freeman, 427 So.2d 1161 (La.1983); State v. Updite, 38,423 (La.App.2d Cir.6/23/04), 877 So.2d 216, writ denied, 04-1866 (La.11/24/04), 888 So.2d 229; State v. Braswell, 605 So.2d 702 (La.App. 2d Cir.1992). The state must then prove beyond a reasonable doubt that the defendant did not act in self-defense. State v. Scales, 93-2003 (La.5/22/95), 655 So.2d 1326, cert. denied, 516 U.S. 1050, 116 S.Ct. 716, 133 L.Ed.2d 670 (1996), rehearing denied, 516 U.S. 1142, 116 S.Ct. 977, 133 L.Ed.2d 897 (1996); State v. Updite, supra. The issue of self-defense requires a dual inquiry, an objective inquiry into whether the force used was reasonable under the circumstances and a subjective inquiry into whether the force was apparently necessary. State v. Robinson, 37,043 (La.App.2d Cir.5/14/03), 848 So.2d 642, and citations therein. A person who is the aggressor or who brings on the difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict. La. R.S. 14:21; State v. Updite, supra; State v. Robinson, supra.
In the present case, the jury could have easily found from the evidence that the discharge of the firearm by Defendant was not reasonable under the circumstances or that Defendant could not have subjectively thought the discharging of the firearm was apparently necessary to defend himself. At the moment before discharging the firearm, Defendant had several reasonable options other than discharging the firearm. He could have driven or walked away from the fight. He could have withheld firing the weapon until determining if he was actually in danger of being shot by the victim.
This assignment is, therefore, without merit.

Assignment of Error Number One: Batson challenge
In this assignment, Defendant argues that the trial court erred in denying his challenge of the State's exercising 9 of its 11 peremptory challenges to exclude African-Americans from the jury. The United States Constitution prohibits the state from engaging in purposeful discrimination on the grounds of race in the exercise of peremptory challenges. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Louisiana law codifies the Batson ruling in La. C. Cr. P. art. 795 C.
La. C. Cr. P. art. 795 provides, in pertinent part:
C. No peremptory challenge made by the state or the defendant shall be based solely upon the race of the juror. If an objection is made that the state or defense has excluded a juror solely on the basis of race, and a prima facie case supporting that objection is made by the objecting party, the court may demand a satisfactory racially neutral reason for *239 the exercise of the challenge, unless the court is satisfied that such reason is apparent from the voir dire examination of the juror. Such demand and disclosure, if required by the court, shall be made outside of the hearing of any juror or prospective juror.
D. The court shall allow to stand each peremptory challenge exercised for a racially neutral reason either apparent from the examination or disclosed by counsel when required by the court. The provisions of Paragraph C and this Paragraph shall not apply when both the state and the defense have exercised a challenge against the same juror.
E. The court shall allow to stand each peremptory challenge for which a satisfactory racially neutral reason is given. Those jurors who have been peremptorily challenged and for whom no satisfactory racially neutral reason is apparent or given may be ordered returned to the panel, or the court may take such other corrective action as it deems appropriate under the circumstances. The court shall make specific findings regarding each such challenge.
When a defendant makes a Batson challenge, claiming the state has used peremptory challenges in a manner which violates the Equal Protection Clause, the defendant must first make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of a juror's race. If the defendant fails to make a prima facie case, then the challenge fails. If a prima facie case is established, the burden shifts to the state to come forward with a race-neutral explanation for its peremptory challenges. Hernandez v. New York, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991); Batson v. Kentucky, supra; State v. Green, 94-0887 (La.5/22/95), 655 So.2d 272.
If the state tenders a race-neutral explanation, then the trial court must decide, in the final step of this three-part analysis, whether the defendant has established purposeful racial discrimination. Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per curiam). To be facially valid, the prosecutor's explanation need not be persuasive or even plausible. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race-neutral. Hernandez v. New York, supra; State v. White, 36,935 (La.App.2d Cir.6/6/03), 850 So.2d 751, writ denied, 03-2616 (La.5/14/04), 872 So.2d 510. The proper inquiry, in this, the final step of the Batson analysis, is whether the defendant's proof, when weighed against the prosecutor's proffered race-neutral explanations, is sufficient to persuade the trial court that discriminatory intent is present. State v. Hobley, 98-2460 (La.12/15/99), 752 So.2d 771. The ultimate burden of persuasion as to racial motivation rests with, and never shifts from, the opponent of the peremptory challenge. Purkett, supra.
The ultimate focus of the Batson inquiry is on the prosecutor's intent at the time of the strike. State v. Green, supra. In resolving the ultimate inquiry before it  whether the proffered race-neutral explanation should be believed  the trial court should examine all of the evidence available. State v. Juniors, 03-2425 (La.6/29/05), 915 So.2d 291. Patterns of strikes and other statements or actions by the prosecutor during voir dire are relevant and may support a finding of discriminatory intent. Id.
The trial court is in a position to observe firsthand the demeanor of the attorneys and venire persons, the nuances of questions asked, the racial composition of the venire and the general atmosphere of the voir dire that simply cannot be replicated *240 from a cold transcript. State v. Juniors, supra; State v. Myers, 99-1803 (La.4/11/00), 761 So.2d 498. As a result, a trial judge's determination on a claim of purposeful discrimination rests largely on credibility evaluations, and the trial court's findings as to purposeful discriminatory intent are entitled to great deference by reviewing courts. Hernandez v. New York, supra; State v. Juniors, supra.
In the case sub judice, the trial court found that the fact that the State used 9 of 11 of its peremptory challenges to exclude African-Americans established a prima facie case of discrimination. The Louisiana Supreme Court has recently stated that it is not convinced that the "numbers alone" establish a prima facie showing of discrimination. State v. Juniors, supra. However, "[o]nce a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." Hernandez v. New York, supra; State v. Juniors, supra; State v. Green, supra.
Accordingly, the correctness of the trial court's initial finding of a prima facie showing of discrimination is now moot. The only issue before this court is whether or not the trial court abused its great discretion in denying Defendant's Batson challenge to the State's peremptory challenges as to the particular prospective jurors. Each prospective juror will be individually addressed.
Fred Davis, Jr. The State argued that its reason for excluding Mr. Davis was concern that he had a criminal record and that it did not have the time to determine if he did. The State also argued that, in 2002, Mr. Davis had been tried for simple burglary and found not guilty. The State's concern was that, if Mr. Davis served on the jury, he may have some animosity towards the State. The State further argued that Mr. Davis had shown hostility towards the State during questioning.
The trial court, in denying Defendant's Batson motion as to Mr. Davis, found it would not have used the word "hostile," but did think that Mr. Davis "got a little quick with his answers and kind of gruff." The trial court did find that the State could have questioned Mr. Davis more about his criminal history, but, based on the situation, denied the motion as to Mr. Davis. The trial court was able to observe Mr. Davis during questioning, and its ruling should be given great deference by this court.
Phyllis Everette Moore. The State argued that it excused Ms. Moore because she testified she was a friend of Defendant's mother.
Alice Gorham. The State argued that it excused Ms. Gorham because she was a friend of Defendant and his mother and that her son and Defendant had played frequently together as children. Ms. Gorham had initially testified she could not sit in judgment of someone else, then later testified she could. The State had challenged her for cause, but lost.
Shawn Russell Williams. Mr. Williams is white. The State argued that Mr. Williams initially indicated he could not sit in judgment of someone. He further testified he would hold a defendant's felony conviction against him.
Donald Ray Lewis. The State argued that Mr. Lewis testified he could not vote to convict Defendant. The State had challenged Mr. Lewis for cause, but the challenge was denied.
Joel Lewis Jackson. The State argued that Mr. Jackson testified he was a friend *241 of Defendant's father and was evasive as to whether or not this friendship would be a factor in determining the case. The State further argued that it gave Mr. Jackson several opportunities to state categorically that his friendship would not make a difference, but he would not do so.
Betty Sue Williams. The State argued that Ms. Williams was extremely nervous during questioning. The State had challenged her for cause, but the challenge was denied. The trial court noted that the longer Ms. Williams was in the jury box, the more nervous she became.
Dr. Annie McConnell Brown. The State argued that Dr. Brown had a nephew who had been killed and she was not satisfied as to how Defendant had been prosecuted. The State also noted that Dr. Brown was close friends with Defendant's family and had even attended Defendant's family gatherings. Although Dr. Brown had testified that this relationship with Defendant's family would not be a factor, the State felt uncomfortable with that relationship.
Nancy King Henning. Ms. Henning is white. The State noted that it had prosecuted her stepson. Although she had testified her son's prosecution would not affect her, the State felt uncomfortable with that fact.
Felicia McGuire. Ms. McGuire also testified that she knew Defendant and Defendant's family, but further stated that it would not affect her ability to decide the case. The State argued that it had initially accepted Ms. McGuire, but later found out that she had sat next to Defendant's mother in the courtroom while waiting to be called for voir dire. The State asserted that it was uncomfortable about this fact.
Defendant argued in the trial court, and before this court, that, because Jonesboro is a small town, it is difficult to find someone who does not know Defendant or his family. Defendant also argued that the State failed to excuse whites who also knew one of Defendant's parents. The knowledge of a party is a sufficient race-neutral reason for the peremptory challenge of a prospective juror. State v. Baker, 34,973 (La.App.2d Cir.9/26/01) 796 So.2d 145. The mere fact that a prosecutor excuses one person with a particular characteristic and not another similarly situated person, however, does not in itself show that the prosecutor's explanation was a mere pretext for discrimination. State v. Collier, 553 So.2d 815 (La.1989). The accepted juror [with a similar characteristic to a peremptorily challenged juror] may have exhibited traits which the prosecutor could have reasonably believed would make him or her desirable as a juror.[3]Id. Likewise, the concern that a prospective juror living near a defendant or a defendant's family may consciously or unconsciously affect his deliberations is a valid *242 reason for excluding him from jury duty. See State v. Juniors, supra. The peremptory challenges were directed at individuals who claimed close friendship with either Defendant or members of his family, namely Moore, Gorman and Brown. In addition, recall that McGuire was observed sitting with Defendant's mother in the courtroom during the proceedings and Jackson was noncommittal when questioned about whether his association with Defendant's father would affect him as a juror in the case. We conclude that the trial court's finding that the State's decision to peremptorily excuse these prospective jurors based on their close friendships and association with Defendant or members of his family and their answers to questions during voir dire was race neutral and was not an abuse of discretion. The trial court could have found that the district attorney "obviously perceived the disclosed connections could consciously or unconsciously affect the jurors' deliberations, and he was entitled to strike the jurors on that ground alone." See State v. Juniors, supra.
Further, a review of the transcript does not show that the State accepted any white jurors who claimed more than a passing knowledge of Defendant or one of his parents. Three of the jurors accepted stated some type of knowledge of, or past contact with, Defendant or his family. First, Aimee Greer stated that she had gone to school with Defendant, but also stated that her knowledge of Defendant would have no bearing on her serving as a juror in the case. Marlin Treadway stated that he knew Defendant's father, but that he would "vote his convictions" and his knowledge of Mr. Qualls would not have any bearing on what he did as a juror in the case. Aubrey Carter stated that he had worked with Defendant's father "off and on" in "times past." Carter further stated that he could vote guilty despite this past contact with Defendant's father. The trial court could reasonably have found that the prosecutor was justified in accepting these jurors because their knowledge of Defendant and/or his family was so attenuated as to not bear on their service as jurors in the case. We find it reasonable to conclude that Greer's, Treadway's and Carter's responses were not the same as those jurors challenged peremptorily and, therefore, we find no abuse of discretion in the trial court's denying Defendant's Batson challenge. See State v. Trotter, 37,325 (La.App.2d Cir.8/22/03), 852 So.2d 1247, writ denied, 03-2764 (La.2/13/04), 867 So.2d 689, wherein this court recognized and, on the facts of Trotter, rejected a "comparative juror argument/analysis" when reviewing a Batson ruling.
In summary, when considering the record as a whole, together with Defendant's failure to make anything other than general arguments as to the State's stated reasons, we conclude that the trial court did not abuse its great discretion in finding that the State had provided race-neutral explanations for its peremptory challenges of the nine African-American prospective jurors. The record reflects that the trial court paid close attention to the responses of each potential juror during voir dire and carefully considered the responses of the State to Defendant's Batson challenge. This is reflected in the trial court noting that particular jurors did, in fact, display traits of nervousness or animosity argued by the State. This assignment is, therefore, without merit.

Assignment of Error Number Two: Impeachment of Wade Singleton
La. C.E. art. 607 provides:
A. Who may attack credibility. The credibility of a witness may be attacked by any party, including the party calling him.

*243 B. Time for attacking and supporting credibility. The credibility of a witness may not be attacked until the witness has been sworn, and the credibility of a witness may not be supported unless it has been attacked. However, a party may question any witness as to his relationship to the parties, interest in the lawsuit, or capacity to perceive or to recollect.
C. Attacking credibility intrinsically. Except as otherwise provided by legislation, a party, to attack the credibility of a witness, may examine him concerning any matter having a reasonable tendency to disprove the truthfulness or accuracy of his testimony.
D. Attacking credibility extrinsically. Except as otherwise provided by legislation:
(1) Extrinsic evidence to show a witness' bias, interest, corruption, or defect of capacity is admissible to attack the credibility of the witness.
(2) Other extrinsic evidence, including prior inconsistent statements and evidence contradicting the witness' testimony, is admissible when offered solely to attack the credibility of a witness unless the court determines that the probative value of the evidence on the issue of credibility is substantially outweighed by the risks of undue consumption of time, confusion of the issues, or unfair prejudice.
La. C.E. art. 613 provides:
Except as the interests of justice otherwise require, extrinsic evidence of bias, interest, or corruption, prior inconsistent statements, conviction of crime, or defects of capacity is admissible after the proponent has first fairly directed the witness' attention to the statement, act, or matter alleged, and the witness has been given the opportunity to admit the fact and has failed distinctly to do so.
Recall that Singleton was called as a witness for the State. He testified that he was a friend of Defendant and Andrews and witnessed the fight between the two men. Singleton further testified that, just before the fight, Andrews put a pistol in his pocket and made statements about having to shoot Defendant. He also testified that, at the beginning of the fight, Andrews struck Defendant in the head with that pistol. The State then attempted to question Singleton about whether, just after the fight, he gave a recorded statement to the investigating officers in which he did not mention Andrews having a pistol or hitting Defendant with that pistol. Defendant objected, arguing that the State could not impeach its own witness. The objection was overruled. Singleton insisted that he had told a police officer, but could not recall which officer. Later in the case, the officer that recorded Singleton's statement testified he never mentioned Andrews having a pistol.
Defendant argues that this impeachment was primarily used to elicit otherwise inadmissible evidence, citing the comments to La. C.E. art. 607. We disagree. The State's questioning was appropriate.
Before a witness' credibility may be attacked, the witness' attention must be called to the inconsistency and the witness be given the opportunity to acknowledge the prior statement. La. C.E. art. 613; State v. Logan, 36,042 (La.App.2d Cir.6/14/02), 822 So.2d 657, writ denied, 02-2174 (La.9/19/03), 853 So.2d 621. In the case sub judice, Singleton continued to assert that he had told the police about Andrews having a gun. The police officers denied that Singleton ever made any such statement. Although a statement, "other than one made by the declarant while testifying at the present trial or hearing, offered *244 in evidence to prove the truth of the matter asserted," is hearsay, La. C.E. art. 801(C), La. C.E. art. 607(D)(2) permits the introduction of a prior inconsistent statement, even though it is hearsay, for the limited purpose of attacking the credibility of a witness. The purpose of impeachment is to diminish the credibility of a witness. When the testimony of a witness in court is inconsistent with a prior statement by the witness, the party calling the witness may be able to use the prior statement to impeach the witness, i.e., to diminish his or her credibility.
This evidence of a prior inconsistent statement, even if admissible because the probative value of the evidence on the issue of credibility substantially outweighs the risks of undue consumption of time, confusion of the issues or unfair prejudice, may only be admitted when offered solely to attack the credibility of the witness and does not constitute substantive evidence of guilt. La. C.E. art. 607 D(2); State v. Allien, 366 So.2d 1308 (La.1978); State v. Williams, 258 La. 251, 246 So.2d 4 (La. 1971); State v. Taylor, 593 So.2d 431 (La. App. 2d Cir.1992).
La. C.E. art. 607 clearly allows a party to impeach his own witness. One purpose of allowing such impeachment is to prevent a party from being damaged by the party's own witness. It is entirely appropriate to use a prior inconsistent statement to impeach one's own witness regarding the substance of that witness' in-court testimony that damaged the prosecutor's case. State v. Logan, supra. New testimony that the victim had a pistol and struck Defendant with that gun clearly damaged the State's case, providing Defendant with a self-defense argument.
This assignment is, therefore, without merit.

Assignment of Error Number Three: Instructing the jury to disregard information about an outstanding bench warrant for Kevin Jackson
Testimony established that Jackson and Defendant had driven past Andrews shortly before the fight and that, just before the fight, Jackson had dropped off Defendant at his home and driven alone to Jody's. Jackson appeared as a witness at trial in response to being subpoenaed by the State. The State released Jackson, however, and allowed him to leave. Jackson did not testify at trial. When cross-examining Chief Horton, defense counsel attempted to ask him why Jackson was not served with an outstanding bench warrant when he was subpoenaed for trial. The State objected, asserting that the question was not relevant. The trial court agreed. Defendant now argues that the trial court's ruling was in error.
Defendant's argument in this assignment is limited to an assertion of relevance; therefore, while other issues may be applicable, we will limit our discussion accordingly.
La. C.E. art. 401 provides:
"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
La. C.E. art. 402 provides:
All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of Louisiana, this Code of Evidence, or other legislation. Evidence which is not relevant is not admissible.
Only relevant evidence is admissible at trial. La. C.E. art. 402. Whether or not a witness, who did not testify at trial, was *245 served with an outstanding bench warrant when he was served with the subpoena for trial does not tend to make the existence of any fact in the elements of the charges at issue more or less probable. It does not prove or disprove whether or not Defendant was a convicted felon and knowingly possessed a firearm or that he committed an assault by the discharging of that firearm. We find that the evidence was not relevant; this assignment is, therefore, without merit.

Assignment of Error Number Seven: Habitual offender status.
In this assignment of error, Defendant provides the following list of reasons why the habitual offender charges were not legally instituted:
1. The docket number given on the so-called "Amended Bill of Information" is a very old case that does not relate to the instant charges.
2. There is no procedure for filing an "Amended Bill of Information" in a case of this matter. A new Bill of Information must be filed.
3. The third paragraph of the so-called "Amended Bill of Information" is not a valid part of an "information" in a case of this nature.
4. The so-called "Amended Bill of Information" actually makes no charge against Defendant.
La. R.S. 15:529.1(D) provides:
D.(1)(a) If, at any time, either after conviction or sentence, it shall appear that a person convicted of a felony has previously been convicted of a felony under the laws of this state or adjudicated a delinquent under Title VIII of the Louisiana Children's Code for the commission of a felony-grade violation of either the Louisiana Controlled Dangerous Substances Law involving the manufacture, distribution, or possession with intent to distribute a controlled dangerous substance or a crime of violence as listed in Paragraph (2) of Subsection A of this Section, or has been convicted under the laws of any other state, or of the United States, or of any foreign government or country, of a crime, which, if committed in this state would be a felony, the district attorney of the parish in which subsequent conviction was had may file an information accusing the person of a previous conviction or adjudication of delinquency. Whereupon the court in which the subsequent conviction was had shall cause the person, whether confined in prison or otherwise, to be brought before it and shall inform him of the allegation contained in the information and of his right to be tried as to the truth thereof according to law and shall require the offender to say whether the allegations are true. If he denies the allegation of the information or refuses to answer or remains silent, his plea or the fact of his silence shall be entered on the record and he shall be given fifteen days to file particular objections to the information, as provided in Subparagraph (b). The judge shall fix a day to inquire whether the offender has been convicted of a prior felony or felonies, or adjudicated a delinquent for an offense or offenses specified above as set forth in the information.
(b) Except as otherwise provided in this Subsection, the district attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact. The presumption of regularity of judgment shall be sufficient to meet the original burden of proof. If the person claims that any conviction or adjudication of delinquency alleged is invalid, he shall file a written response to the information. A copy of the response shall be served upon the prosecutor. A person claiming that a conviction or adjudication *246 of delinquency alleged in the information was obtained in violation of the Constitutions of Louisiana or of the United States shall set forth his claim, and the factual basis therefor, with particularity in his response to the information. The person shall have the burden of proof, by a preponderance of the evidence, on any issue of fact raised by the response. Any challenge to a previous conviction or adjudication of delinquency which is not made before sentence is imposed may not thereafter be raised to attack the sentence.
(2) Following a contradictory hearing, the court shall find that the defendant is:
(a) A second offender upon proof of a prior felony conviction or adjudication of delinquency as authorized in Subsection A.
(b) A third offender, upon proof of two prior felony convictions or adjudications of delinquency as authorized in Subsection A, or any combination thereof.
(c) A fourth offender, upon proof of three or more prior felony convictions or adjudications of delinquency as authorized in Subsection A, or any combination thereof.
(3) When the judge finds that he has been convicted of a prior felony or felonies or adjudicated a delinquent as authorized in Subsection A, or if he acknowledges or confesses in open court, after being duly cautioned as to his rights, that he has been so convicted or adjudicated, the court shall sentence him to the punishment prescribed in this Section, and shall vacate the previous sentence if already imposed, deducting from the new sentence the time actually served under the sentence so vacated. The court shall provide written reasons for its determination. Either party may seek review of an adverse ruling.
In the case sub judice, we note that Defendant failed to raise any of the defects as to the form of the habitual offender bill of information prior to the hearing, as required by La. R.S. 15:529.1(D). Failure to timely object to such defects constitutes a waiver. State v. Green, 36,741 (La.App.2d Cir.3/5/03), 839 So.2d 970, writ denied, 03-0973 (La.11/7/03), 857 So.2d 517; State v. Hunter, 33,066 (La.App.2d Cir.9/27/00), 768 So.2d 687, writ denied, 00-3070 (La.10/26/01), 799 So.2d 1150, writ denied, 01-2087 (La.4/19/02), 813 So.2d 424.
Assuming, arguendo, that Defendant had preserved this objection, we find that his claims have no merit. A review of the habitual offender bill of information shows that it apparently was filed with one number missing from the docket number, which was hand corrected. Defendant has cited no authority to support the proposition that the bill cannot be labeled as an "amended bill of information." The bill clearly provides the information required by La. R.S. 15:529.1. Errors in a habitual offender proceeding are subject to harmless error review. State v. Richardson, 39,456 (La.App.2d Cir.3/2/05), 896 So.2d 257. Any such errors in this case are clearly harmless error.
In addition, we find that the evidence adduced at the habitual offender hearing was sufficient to carry the State's burden of proof. If a defendant denies the allegations of the multiple offender bill of information, the burden is on the state to prove the existence of the prior guilty pleas and that the defendant was represented by counsel when they were taken. State v. Callier, 39,650 (La.App.2d Cir.7/27/05), 909 So.2d 23, citing State v. Shelton, 621 So.2d 769 (La.1993). If the state meets this burden, the defendant has the burden to produce some affirmative *247 evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. Id. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the state. Id. The state will meet its burden if it introduces a "perfect" transcript of the taking of the guilty plea  one which reflects a colloquy between judge and defendant wherein the defendant was informed of, and specifically waived, his right to trial by jury, his privilege against self-incrimination and his right to confront his accusers. Id.
If the state introduces anything less than a "perfect" transcript, i.e., a guilty plea form, a minute entry, an "imperfect" transcript or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the state to determine whether the state has met its burden of proving that the defendant's prior guilty plea was informed and voluntary and made with an articulated waiver of the three Boykin rights. State v. Shelton, supra. The state's burden of proof may be met by a contemporaneous record of the guilty plea proceedings, preferably by the transcript itself. Id.
In this case, to prove the 1999 conviction, the State produced copies of the court minutes and bills of information, judgment of conviction and a form signed by Defendant acknowledging that he understood the constitutional rights he would be waiving with his guilty plea. To prove the 1994 conviction, the State produced copies of the judgment of conviction and the signed waiver of rights form. For both convictions, the State also produced testimony from Chief Horton who testified as to his personal knowledge of the arrest of Defendant on both charges. Chief Horton further testified that he obtained Defendant's social security number during both arrests. That social security number matched the number given on both waiver of rights forms from the two convictions.
While this documentation may be viewed as "less than perfect," as noted by Defendant in his brief, Jonesboro is a small town, and the State provided testimony as to personal knowledge of Defendant's arrest and convictions on the two predicate offenses. Accordingly, it cannot be said that the trial court abused its discretion by finding that the State met its burden of proving Defendant's prior guilty pleas and that those pleas were informed and voluntary and made with an articulated waiver of the three Boykin rights.
Defendant's argument that one of the convictions was beyond the ten-year time limitation is also without merit on its face. Defendant's first conviction, the 1994 conviction for possession of cocaine, carried a maximum sentence of five years under La. R.S. 40:967. The ten-year cleansing period in La. R.S. 15:529.1(C) applies when more than ten years have elapsed since the expiration of the maximum sentence or sentences of the previous conviction or convictions and the present conviction. It has been well under ten years since Defendant's 1999 conviction. See State v. Everett, 00-2998 (La.5/14/02), 816 So.2d 1272.
In addition, we find no merit to the claim of double jeopardy for enhancing Defendant's sentence for possession of a firearm by a convicted felon. The record shows that the State sought enhancement of Defendant's conviction for assault by the discharge of a firearm, not the firearm possession conviction.
This assignment is, therefore, without merit.

Assignment of Error Number Eight: Excessive sentence.
La. R.S. 14:37.4 C provides:

*248 Whoever commits an aggravated assault with a firearm shall be fined not more than five thousand dollars, or imprisoned for not more than five years, with or without hard labor, or both.
La. R.S. 15:529.1(A)(1)(b)(i) provides:
If the third felony is such that upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life then:
(I) The person shall be sentenced to imprisonment for a determinate term not less than two-thirds of the longest possible sentence for the conviction and not more than twice the longest possible sentence prescribed for a first conviction;
Defendant's maximum sentence under La. R.S. 14:37.4 was five years. As a third-felony offender, his exposure was from two-thirds of five years to ten years. La. R.S. 15:529.1(A)(1)(b)(i). Defendant complains that his ten-year sentence is excessive.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App.2d Cir.6/24/98), 715 So.2d 641. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary, even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are Defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864; State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir.1988), writ denied, 521 So.2d 1143 (La.1988). There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App.2d Cir.3/1/00), 754 So.2d 392, writ denied, 00-1467 (La.2/2/01), 783 So.2d 385.
The record in the case sub judice shows that the trial court extensively reviewed Defendant's background with the factors of La. C. Cr. P. art. 894.1.
The next prong is whether the sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985).
Defendant's background reflects chronic difficulties with obeying the law. The facts of the offense show that Defendant, in producing and firing a gun near a large crowd, needlessly endangered the lives of several bystanders. The sentence imposed does not shock this court's sense of justice.
This assignment is, therefore, without merit.

CONCLUSION
For the foregoing reasons, the conviction and sentence of Defendant, Ronnie Qualls, are affirmed.
AFFIRMED.
*249 APPLICATION FOR REHEARING
Before WILLIAMS, STEWART, CARAWAY, PEATROSS and MOORE, JJ.
Rehearing denied.
NOTES
[1] At trial, Defendant stipulated that he was a convicted felon.
[2] Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
[3] In State v. Collier, the supreme court reversed the court of appeal, finding that the state's peremptory challenge to two black prospective jurors because of their affiliation with a Baptist church violated Batson. The court noted that the only reason the two black Baptist jurors were challenged was because they were Baptist and the "prosecutor did not pursue any consistent, trial-related strategy of striking jurors with the same or similar characteristics." Two other black Baptist prospective jurors and other white Baptist prospective jurors were accepted by the state. The court noted, however, that a prosecutor's failure to challenge jurors similarly situated or who share the same characteristic does not by itself prove discriminatory intent. Stated another way, there may be other traits exhibited by the accepted juror that the prosecutor may have reasonably believed would make the person a good juror despite having the same characteristic that provided reason for challenging the similar situated juror. It is this principle from State v. Collier that we find applicable to the case sub judice.